2002 WY 75

**Dan Eugene INGALLS, Petitioner,**

v.

**The STATE of Wyoming, Respondent.**

**No. 01–70.**

Supreme Court of Wyoming.

May 20, 2002.

Sky D. Phifer, Lander, Wyoming, Representing Petitioner.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Robin Sessions Cooley, Senior Assistant Attorney General, Cheyenne, Wyoming, Representing Respondent.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] On April 4, 1999, the petitioner, Dan Ingalls (Ingalls), was involved in an altercation with Gerald Huelle when he tried to remove his cattle from Huelle's feed grounds. For his role in the fracas, Ingalls was eventually convicted in the Fremont County Court (now circuit court) of three misdemeanors—property destruction, reckless endangering, and removal of property without the lienholder's consent. The convictions were affirmed upon appeal to the district court. On May 1, 2001, we granted Ingalls' Petition for Writ of Review. Finding error in the proceedings leading to the convictions, we reverse.

## ISSUES

[¶ 2] The issues before this Court are:

1. Whether the circuit court complied with W.R.Cr.P. 11 in accepting Ingalls' pleas?

2. Whether *ex parte* communications occurred between the State and the circuit court that deprived Ingalls of due process?

## FACTS

[¶ 3] Ingalls was charged by citation with several misdemeanors.[1] The unverified reports of the Fremont County Sheriff's office were filed along with the citations, but copies were not given to Ingalls. At arraignment, Ingalls entered not guilty pleas to all charges and informed the circuit court that he would retain private counsel. His release order included the condition that an attorney enter an appearance on his behalf within ten working days.

[¶ 4] Ingalls failed timely to have an attorney enter an appearance, so the circuit court entered an Order to Show Cause why he should not be held in contempt. At the hearing on the show cause order, Ingalls requested appointment of counsel, and the circuit court appointed a public defender to represent Ingalls. Ingalls also requested that he be supplied with a copy of the sheriff's office reports. The circuit court orally ordered the State to provide copies to Ingalls within three working days. A month later, Ingalls filed a pro se Motion to Dismiss because he had not been provided with the sheriff's office reports. The record does not reflect that the circuit court ever ruled on the motion to dismiss. Despite repeated requests to the circuit court and the prosecuting attorney, Ingalls did not get a copy of the sheriff's office reports until three months after the charges were brought.

[¶ 5] The circuit court held a scheduling conference on September 27, 1999, at which time the trial was set for November 8, 1999. The next day, Ingalls filed a Motion for Disqualification of Judge, which was later heard and denied. The trial was then reset for January 27, 2000. On that date, rather than holding a trial, the circuit judge held a conference in his chambers. The circuit judge and county attorney were present in person, while Ingalls and his attorney appeared by telephone. No verbatim recording was made of this telephone conference. A plea bargain was discussed whereby the State would amend certain charges and Ingalls would change his plea to certain charges. There was also discussion to the effect that Ingalls would change his pleas if he received no jail time. The circuit court would not "guarantee" no jail time, but agreed to order a Presentence Investigation Report, and, according to Ingalls, agreed to follow its recommendations. The Presentence Investigation Report was completed on February 18, 2000, and recommended that Ingalls receive unsupervised probation.

[¶ 6] Sentencing was held on March 14, 2000. Ingalls was sentenced to 180 days in jail for reckless endangering, and 180 days in jail for property destruction, with the sentences to run concurrently, and with all but thirty days suspended. He was also fined

---

1. The details of those charges and their eventual dispositions will be discussed later herein.

$100.00 for removal of property without the lienholder's consent, and was assessed court costs and a victim's compensation surcharge.

[¶ 7] Ingalls filed an appeal to the district court on March 16, 2000. Because no record was made of the proceedings held in chambers on January 27, 2000, the circuit court received submissions from Ingalls and the State to attempt to settle the record pursuant to W.R.A.P. 3.03. The circuit court accepted the State's submission and entered an Order Settling Record on September 7, 2000. That version of the record indicated that, during the telephone conference in chambers, Ingalls pled no contest to reckless endangering and guilty to both property destruction and removal of property without lienholder's consent. In affirming the convictions, the district court declined to substitute its judgment for that of the circuit court as to which version of the facts was correct, and concluded that Ingalls had failed to show violation of any substantial right.

## DISCUSSION

### W.R.CR.P. 11

[¶ 8] This Court adopted the Wyoming Rules of Criminal Procedure in 1968. The rules were revised and re-adopted in 1991. The purpose of the rules is set forth in W.R.Cr.P. 2:

These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.

[¶ 9] Consonant with these purposes, W.R.Cr.P. 3 and 3.1 provide that misdemeanors may be charged by citation rather than by indictment or information. Likewise, subsections (b) and (c) of W.R.Cr.P. 11 allow for less formal advisements at arraignment where a defendant charged only with a misdemeanor is represented by counsel. Nevertheless, the Wyoming Rules of Criminal Procedure contemplate certain formalities in the plea process. For instance, whether charged by indictment, information, or citation, and whether charged with a felony or misdemeanor, each defendant must be arraigned pursuant to W.R.Cr.P. 10:

Arraignments shall be conducted in open court and shall consist of reading the indictment, information or citation to the defendant or stating to the defendant the substance of the charge and calling on the defendant to plead thereto. The defendant shall be given a copy of the indictment, information or citation before being called upon to plead.

[¶ 10] It is in the acceptance of guilty and nolo contendere pleas that the judge is most strictly required to follow the dictates of the Wyoming Rules of Criminal Procedure, in general, and W.R.Cr.P. 11, in particular. Several subsections of W.R.Cr.P. 11 bear directly on the issues at hand:

(b) *Advice to Defendant.*—Except for forfeitures on citations (Rule 3.1) and pleas entered under Rule 43(c)(2), before accepting a plea of guilty or nolo contendere to a felony or to a misdemeanor when the defendant is not represented by counsel, the court must address the defendant personally in open court and, unless the defendant has been previously advised by the court on the record and in the presence of counsel, inform the defendant of, and determine that the defendant understands, the following:

(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law and other sanctions which could attend a conviction including, when applicable, the general nature of any mandatory assessments (such as the surcharge for the Crime Victim Compensation Account), discretionary assessments (costs, attorney fees, restitution, etc.) and, in controlled substance offenses, the potential loss of entitlement to federal benefits....

* * *

(2) The defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant;

(3) The defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to court process to obtain the testimony of other witnesses, and the right against compelled self-incrimination;

(4) If a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and

(5) If the court intends to question the defendant under oath, on the record, and in the presence of counsel, about the offense to which the defendant has pleaded guilty, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

(c) *Waiver of advisements.*—A misdemeanor defendant represented by counsel may waive the advisements required in subdivision (b).

(d) *Insuring that plea is voluntary.*— The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or the defendant's attorney.

\* \* \*

(f) *Determining accuracy of plea.*— Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

(g) *Record of proceedings.*—A verbatim record of the proceedings at which the defendant enters a plea shall be made and, if there is a plea of guilty or nolo contendere, the record shall include, without limitation, the court's advice to the defendant, the inquiry into the voluntariness of the plea including any plea agreement, and the inquiry into the accuracy of a guilty plea.

(h) *Harmless error.*—Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.

[¶ 11] W.R.Cr.P. 11 is supposed to act as a guideline for the courts in determining that a plea by a defendant is intelligent, knowing, and voluntary, and that the plea has been entered with an understanding of the consequences. *Bird v. State,* 901 P.2d 1123, 1128 (Wyo.1995), *cert. denied,* 531 U.S. 907, 121 S.Ct. 253, 148 L.Ed.2d 183 (2000); *Smallwood v. State,* 748 P.2d 1141, 1143 (Wyo. 1988). Strict compliance with the rule is required to ensure due process of law; failure to comply is unconstitutional and requires reversal. *Hoggatt v. State,* 606 P.2d 718, 725 (Wyo.1980). The attorneys for the state and for the defendant have a duty to make sure that the court does not omit necessary inquiries. *Sanchez v. State,* 592 P.2d 1130, 1136 (Wyo.1979) (*quoting State v. Darling,* 109 Ariz. 148, 506 P.2d 1042, 1047 (1973)). Further, resort to the extended record should not be required; the record made at the time a guilty plea is entered should satisfy the rule's requirements. *Id.* (*quoting Darling,* 506 P.2d at 1047).

[¶ 12] Before we address the particular W.R.Cr.P. 11 deficiencies that mandate reversal of Ingalls' convictions, we will first describe the procedural messiness that characterizes this entire case and which contributes to the decision to reverse. We noted at the outset of this opinion that Ingalls was charged with several misdemeanors. The record on appeal, however, contains only one citation, that being for reckless endangering. The State's appellate brief begins by referencing that one citation. Ingalls' appellate brief, on the other hand, suggests that the original charges were reckless endangering, property destruction, and three counts of battery.

[¶ 13]   This confusion, or perhaps just lack of clarity, persists throughout the record. Several documents carry five circuit court docket numbers, no doubt reflecting the five original charges. The Order for Presentence Investigation has only one docket number and indicates that Ingalls pled guilty only to property destruction. The Presentence Investigation Report itself shows a guilty plea to property destruction, "no plea agreement provided," and "no disposition" as to reckless endangering and the three battery counts. The Judgment and Sentence, to the contrary, is headed with three docket numbers and reflects pleas of guilty to property destruction and removal of property without the lienholder's consent, and a plea of nolo contendere to reckless endangering. There are no amended charging documents in the record, and there is no indication that Ingalls was ever arraigned on amended charges. Capping off this untidiness is the fact that the Judgment and Sentence states that Ingalls pled guilty to property destruction in violation of Wyo. Stat. Ann. § 6–2–301(a) and (b)(i) (1977 as amended) and that he pled nolo contendere to reckless endangering in violation of Wyo. Stat. Ann. § 6–2–501(a) and (b)(i) (1977 as amended). Property destruction is actually found at Wyo. Stat. Ann. § 6–3–201 (LexisNexis 2001) and reckless endangering is found at Wyo. Stat. Ann. § 6–2–504 (LexisNexis 2001).

■   [¶ 14]   This imprecision carried over into the taking of Ingalls' pleas, and it is that imprecision that requires reversal of the Judgment and Sentence. Ingalls contends that at no time did he even enter pleas; rather, there was simply a discussion of a proposed plea agreement. While this issue seemingly was resolved against Ingalls when the circuit court adopted the State's W.R.A.P. 3.03 submittal, that submittal says only that Ingalls "offered" pleas to the three charges as amended.[2] There is no indication that such pleas, if offered, were accepted by the circuit court, or that, in accepting the

pleas, the circuit court performed any of the tasks mandated by W.R.Cr.P. 11. The lack of a verbatim record, which itself is a violation of W.R.Cr.P. 11(g), prevents us from knowing whether the circuit court read or described the charges to Ingalls, whether the circuit court advised Ingalls as to his rights and as to the consequences of his pleas, whether the circuit court determined the voluntariness of the pleas, or whether the circuit court determined the accuracy of the pleas. Furthermore, there is no indication in the record that, pursuant to W.R.Cr.P. 11(c), Ingalls waived the necessary advisements.

### EX PARTE COMMUNICATIONS

[¶ 15]   When an information is filed, the court decides whether there is probable cause to issue a summons or warrant by reading the verified information or an accompanying affidavit. W.R.Cr.P. 4. The effect of a citation, on the other hand, is to allow a defendant to be charged, and to promise to appear in court, without the necessity of court involvement at this preliminary charging stage of the proceedings. W.R.Cr.P. 3.1. In the case of an information, the judge issuing the warrant or summons gains knowledge of the facts alleged in the information or affidavit. In the case of a citation, the judge does not gain such knowledge.

[¶ 16]   In the instant case, when the investigating officer filed the citations with the circuit court, he also filed the unverified sheriff's office reports concerning the case. The State has conceded that such reports are filed with all citations in Riverton's circuit court. For reasons unexplained in the record, Ingalls had some difficulty in obtaining copies of those reports from the State.[3]   He now contends that the filing of the sheriff's office reports constituted an *ex parte* communication between the State and the circuit court, and his inability to obtain a copy of the sheriff's office reports violated due process.

■   [¶ 17]   Because these claims present questions of law, *de novo* review is required.

---

2.  Long after the January 27, 2000, telephone conference, the pleas were still being characterized in the record as future events. Even as late as the March 14, 2000, sentencing hearing, counsel indicated that, pursuant to the plea agree-

ment, Ingalls "will" plead guilty to the amended charges.

3.  Why Ingalls simply did not copy them from the court file is not explained in the record.

If the district court's decision is in accordance with law, it is affirmed; if not, it is corrected. *Garver v. Garver,* 981 P.2d 471, 472 (Wyo.1999). In support of his complaint that an *ex parte* communication occurred, Ingalls cites to *Moore v. Moore,* 809 P.2d 261 (Wyo.1991) and *Coletti v. State,* 769 P.2d 361 (Wyo.1989), claiming that this Court "has made it quite clear that submitting a report by a Sheriff's Deputy to the Court, unbeknownst to the defendant, constitutes improper *ex parte* communication." *Moore* and *Coletti* are distinguishable from this case. Unlike Coletti, Ingalls knew about the sheriff's office reports. Further, the sheriff's office reports in the instant case were not submitted to influence the circuit court for sentencing purposes as was the letter in *Coletti. Coletti,* 769 P.2d at 362. In *Moore,* the trial court discussed a custody decision with the child's guardian ad litem prior to ruling on the custody issue. *Moore,* 809 P.2d at 264. Nothing like that occurred here.

[¶ 18] In both *Moore* and *Coletti,* the challenged communications were made directly to the trial judge rather than, as here, being filed as an addendum to the charging documents that initiated the case. Thus, the judge in both *Moore* and *Coletti* was directly involved in the *ex parte* communications. Even then, this Court did not find reversible error in either case. In *Moore,* we stated:

> Furthermore, a claim of error relating to *ex parte* contact is susceptible to waiver, as is true of most claims of error. The trial judge certainly made known to the parties the fact of the *ex parte* contact. The appellant did not object at that time. The appellant did not seek to explore the tenor of the *ex parte* contact. Instead, the parties accepted what the court said as being a full disclosure of the event. It was only after the articulation of an adverse ruling that the appellant became concerned about the matter of *ex parte* contact.

That matter should have been raised and explored at the trial.

*Moore,* 809 P.2d at 264.

[¶ 19] The same is true in the instant case. If filing the sheriff's office reports constituted an improper *ex parte* communication, Ingalls should have made that objection in the circuit court. Instead, Ingalls' counsel actually relied on the sheriff's office reports during argument at sentencing. Ingalls waived any objections to the filing of the sheriff's office reports.

[¶ 20] Ingalls further alleges prejudice because he was not given a copy of the sheriff's office reports until he was appointed an attorney in late July, in violation of due process. He relies in particular on W.R.Cr.P. 5(b), which requires, in pertinent part, that the "defendant shall be given a copy of the information or citation and any supporting affidavits before being called upon to plead." As we noted above, supporting affidavits are filed with informations, but not with citations. The investigative reports that may exist in both situations are not part of the charging documents and need not be provided to a defendant prior to entry of an initial plea. To hold otherwise would jeopardize the purposes of the rules set forth above.[4]

[¶ 21] Ingalls also argues that his early requests for copies of the sheriff's office reports were denied. We consider this to be a discovery issue. As noted above, Ingalls did receive copies of the sheriff's office reports prior to sentencing and he did not pursue this issue at the sentencing hearing. We perceive nothing in the record suggesting prejudice to Ingalls by any delay in discovery. Since this case is being reversed and remanded on Ingalls' first issue, any remaining discovery issues should be addressed in the circuit court. We decline to address the underlying issue of whether such reports ever should be placed in the court file along with the citation. This question was not adequately briefed.

---

4. Many defendants appear in court on citations long before any law enforcement reports become available even to the prosecutor, no less the defendant. We would impose unmanageable delays, particularly in the circuit courts, were we to disallow entry of a plea prior to completion and full discovery of those reports.

## CONCLUSION

[¶ 22] We are mindful that W.R.Cr.P. 11(h) recognizes harmless error where variances from the rule's mandates have not been shown to have affected a defendant's substantial rights. Before we will consider harmless error, however, there must have been a reasonable modicum of required formality in the plea proceedings. In the instant case, even if we conclude, as did the district court, that Ingalls uttered the magic words, "I plead guilty" over the telephone on January 27, 2000, we simply cannot conclude that Ingalls pled guilty with the knowledge and voluntariness that is to be ensured by compliance with W.R.Cr.P. 11. As we have previously stated, "[a]ny error in accepting a guilty plea under W.R.Cr.P. 15 [now W.R.Cr.P. 11] must be harmless beyond a reasonable doubt because such an error implicates a denial of constitutional rights." *Stice v. State,* 799 P.2d 1204, 1208 (Wyo. 1990). We continue also to adhere to the additional holding of *Stice* as to the reasons strict compliance with W.R.Cr.P. 11 is necessary:

> Those purposes are to assist the judge in making the constitutionally required determination that a defendant's plea is truly voluntary, to produce a complete record at the time the plea was entered of the factors relevant to this voluntariness determination, and to enable more expeditious disposition of the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.

*Stice,* 799 P.2d at 1209.

[¶ 23] We conclude that the circuit court's failure to follow W.R.Cr.P. 11 in accepting Ingalls' pleas requires that the Judgment and Sentence in this case be reversed. We further hold that W.R.Cr.P. 5(b) does not require delivery of law enforcement investigative reports to a defendant before entry of a plea. In the instant case, Ingalls has not shown that he was prejudiced by the allegedly delayed production of copies of such reports to his attorney. The case is remanded to the district court for the purpose of further remand to the circuit court for proceedings pursuant to Ingalls' pleas to the original charges or other resolution of this matter.