2007 WY 186

**Jesse THOMAS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 06–266.**

Supreme Court of Wyoming.

Nov. 20, 2007.

Representing Appellant: Diane M. Lozano, State Public Defender, PDP; Tina N. Kerin, Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1]   Pursuant to a plea agreement, Jesse Thomas pleaded no contest to one count of attempted second degree murder and two counts of aggravated assault and battery. On appeal, he claims he should be allowed to withdraw his no contest pleas because the district court did not properly advise him in accordance with W.R.Cr.P. 11 and, consequently, his pleas were not knowing and voluntary.  Mr. Thomas also contends the State breached the plea agreement by arguing for a prison term of greater than 20 years on the attempted murder charge.

[¶ 2]   We conclude the district court failed to advise Mr. Thomas in accordance with Rule 11 and its error was not harmless beyond a reasonable doubt.   Accordingly, we reverse and remand.

## ISSUES

[¶ 3]   Mr. Thomas presents the following appellate issues:

I.    Jesse Thomas' plea was involuntary due to the fact that the trial court failed to apprise Mr. Thomas of the maximum and minimum penalties and assessments at the change of plea hearing.

II.   The State of Wyoming violated its plea agreement by recommending a sentence in excess of the negotiated sentencing cap.

The State rephrases the issues as:

I.    Was the district court's failure to advise appellant pursuant to W.R.Cr.P. 11(b) harmless?

II.   Did the State materially and substantially breach the plea agreement?

## FACTS

[¶ 4] Pursuant to a plea agreement, Mr. Thomas pled no contest to one count of attempted second degree murder, in violation of Wyo. Stat. Ann. §§ 6–1–301(a) and 6–2–104 (LexisNexis 2007),[1] and two counts of aggravated assault and battery, in violation of Wyo. Stat. Ann. § 6–2–502(a)(iii) (Lexis-Nexis 2007).[2] The charges arose from an incident on August 2, 2005, when Mr. Thomas hit his former girlfriend with his truck and pointed a gun at her and another woman.

[¶ 5] At the re-arraignment hearing, defense counsel recited the terms of the plea agreement. She indicated the State agreed to amend the original information, which charged one count of attempted first degree murder, two counts of aggravated assault and battery and two counts of reckless endangerment, to charge one count of attempted second degree murder and two counts of aggravated assault. In addition to amending the charges, the State agreed to "cap its sentencing recommendation at no higher than 20 years" on the attempted second degree murder charge. Defense counsel stated that, with regard to the aggravated assaults, "we can argue whatever we want for those concurrent or consecutive sentences."

[¶ 6] At the sentencing hearing, counsel indicated that, in order to comply with the attempted second degree murder statute and Wyoming's indeterminate sentencing statute,

Wyo. Stat. Ann. § 7–13–201 (LexisNexis 2007),[3] the State's recommendation would have to be for a minimum of 20 years and a maximum of 22 years and a few months. The district court then proceeded to sentence Mr. Thomas to a period of not less than 240 months nor more than 266 months on the attempted murder charge, 96 to 120 months on one of the aggravated assault charges, and 84 to 120 months on the other. The court made the first two sentences concurrent, but the third was to run consecutively. Mr. Thomas appeals from the judgment and sentence.

## STANDARDS OF REVIEW

[¶ 7] The issue of whether the district court adequately advised Mr. Thomas of the consequences of his plea is a question of law we review *de novo*. *Whitten v. State*, 2005 WY 55, ¶ 6, 110 P.3d 892, 894 (Wyo. 2005). Similarly, the issue of whether the State breached its obligations under the plea agreement is subject to *de novo* review. *Frederick v. State*, 2007 WY 27, ¶ 13, 151 P.3d 1136, 1141 (Wyo.2007).

## DISCUSSION

[¶ 8] Mr. Thomas claims his pleas were not knowing and voluntary because the district court did not advise him of the minimum and maximum penalties for his crimes, the possibility that restitution would be or-

---

1. Section 6–1–301(a) states:
   (a) A person is guilty of an attempt to commit a crime if:
   (i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime; or
   (ii) He intentionally engages in conduct which would constitute the crime had the attendant circumstances been as the person believes them to be.
   Section 6–2–104 states:
   Whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree, and shall be imprisoned in the penitentiary for any term not less than twenty (20) years, or during life.

2. Section 6–2–502(a)(iii) states:
   (a) A person is guilty of aggravated assault and battery if he:

   . . . .
   (iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another;

3. Section 7–13–201 states:
   Except where a term of life is required by law, or as otherwise provided by W.S. 7–13–101, when a person is sentenced for the commission of a felony, the court imposing the sentence shall not fix a definite term of imprisonment but shall establish a maximum and minimum term within the limits authorized for the statute violated. The maximum term shall not be greater than the maximum provided by law for the statute violated, and the minimum term shall not be less than the minimum provided by law for the statute violated, nor greater than ninety percent (90%) of the maximum term imposed.

dered, or that his sentences could run consecutively. Rule 11 of the Wyoming Rules of Criminal Procedure sets out the procedure for pleas. Subsection (b) of that rule delineates the advisements the district court must give a defendant before accepting a plea of guilty or no contest:

(b) *Advice to Defendant.*—Except for forfeitures on citations (Rule 3.1) and pleas entered under Rule 43(c)(2), before accepting a plea of guilty or nolo contendere to a felony or to a misdemeanor when the defendant is not represented by counsel, the court must address the defendant personally in open court and, unless the defendant has been previously advised by the court on the record and in the presence of counsel, inform the defendant of, and determine that the defendant understands, the following:

(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law and other sanctions which could attend a conviction including, when applicable, the general nature of any mandatory assessments (such as the surcharge for the Crime Victim Compensation Account), discretionary assessments (costs, attorney fees, restitution, etc.) and, in controlled substance offenses, the potential loss of entitlement to federal benefits. However:

(A) Disclosure of specific dollar amounts is not required;

(B) Failure to advise of assessments or possible entitlement forfeitures shall not invalidate a guilty plea, but assessments, the general nature of which were not disclosed to the defendant, may not be imposed upon the defendant unless the defendant is afforded an opportunity to withdraw the guilty plea; and

(C) If assessments or forfeitures are imposed without proper disclosure a request for relief shall be addressed to the trial court under Rule 35 before an appeal may be taken on that issue.

(2) The defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant;

(3) The defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to court process to obtain the testimony of other witnesses, and the right against compelled self-incrimination;

(4) If a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and

(5) If the court intends to question the defendant under oath, on the record, and in the presence of counsel, about the offense to which the defendant has pleaded guilty, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

[¶ 9] In *Ingalls v. State,* 2002 WY 75, ¶ 11, 46 P.3d 856, 860 (Wyo.2002), we explained that W.R.Cr.P. 11 sets forth the procedure for courts to use in determining that a defendant's plea is intelligent, knowing and voluntary and entered with an understanding of the consequences. *See also, Bird v. State,* 901 P.2d 1123, 1128 (Wyo.1995), *cert. denied,* 531 U.S. 907, 121 S.Ct. 253, 148 L.Ed.2d 183 (2000); *Smallwood v. State,* 748 P.2d 1141, 1143 (Wyo.1988). We have stressed that "[s]trict compliance with the rule is required to ensure due process of law." *Ingalls,* ¶ 11, 46 P.3d at 860. Other than as specifically allowed in Rule 11, "resort to the extended record should not be required; the record made at the time a guilty plea is entered should satisfy the rule's requirements." *Id. See also, Follett v. State,* 2006 WY 47, ¶ 23, 132 P.3d 1155, 1163 (Wyo.2006) (recognizing that Rule 11 does not require the court to give the defendant advice at the change of plea hearing that has previously been given on the record and in the presence of counsel).

[¶ 10] The colloquy at the hearing when Mr. Thomas changed his plea to no contest to the three counts for which he ultimately was sentenced was quite short. Defense counsel described the plea agreement as:

[Defense Counsel]: The agreement is that the State will reduce the charge from attempted first-degree murder to attempted second-degree murder. They will put a cap of 20 years for their arrangement (sic) on what his sentence would be after we receive the presentence investigation report.

He also will plead guilty to two aggravated assaults, and we can argue whatever we want for those concurrent or consecutive sentences.

The district court reviewed the terms of the plea agreement and then addressed Mr. Thomas as follows:

THE COURT: Sir, do you understand the arrangement that's been made in your behalf by your attorney?

THE DEFENDANT: I do, Your Honor.

THE COURT: Is that with your knowledge and participation?

THE DEFENDANT: Yeah—yes, Your Honor.

THE COURT: And other than that agreement has anybody made any promise to you or has anybody threatened you in any way to induce you to offer a plea of guilty?

THE DEFENDANT: No, sir, Your Honor.

[Defense Counsel]: I'm sorry, Your Honor. To make it clear, he's going to plead no contest. . . .

[Prosecutor]: That's correct, Your Honor. . . .

THE COURT: Mr. Thomas, you understand, I presume, that the plea of nolo contendere carries the same legal consequences as a guilty plea?

THE DEFENDANT: Yes, sir.

THE COURT: You were seated here in the jury box a while ago. I gave advisement on the consequences of a guilty plea. That is, by such a plea, should the Court accept it, [you] permanently waive and give up your right to a trial and subject yourself to the possibility of the maximum penalties. Did you hear and understand that advisement?

THE DEFENDANT: I yes, I did, Your Honor.

THE COURT: Do you have any questions about it?

THE DEFENDANT: No, sir.

THE COURT: The first count, sir, is that on or about the 2nd day of August of 2005 in Laramie County you unlawfully with the intent to kill [the victim] drove your vehicle into [the victim] contrary to the statute. Is that—will that be the form of the amended charge?

[Prosecutor]: Essentially, yes, Your Honor.

THE COURT: But it would be without premeditation.

[Prosecutor]: That's correct, Your Honor.

THE COURT: You understand the charge, Mr. Thomas?

THE DEFENDANT: Yes, I do.

THE COURT: And how do you plead to that charge?

THE DEFENDANT: No contest.

THE COURT: Who can provide the—

[Prosecutor]: State will provide a factual basis, Your Honor.

THE COURT: We'll go ahead with the other, too, and then you will do that, please.

Then the second count, Mr. Thomas, alleges on the 2nd day of August of 2005, you did unlawfully threaten to use a drawn deadly weapon on the same person, [the victim]; that, on the 2nd day of August 2005, you unlawfully threatened to use a drawn deadly weapon on another, did so unlawfully threaten to use a drawn deadly weapon on [the other victim]. How do you plead to those two charges?

THE DEFENDANT: No contest.

THE COURT: We gather the additional items are to be dismissed; is that correct?

[Prosecutor]: That is correct, Your Honor.

The prosecutor, with a couple of additions by defense counsel, provided a factual basis for Mr. Thomas' no contest pleas. The colloquy continued as follows:

THE COURT: Mr. Thomas, the fact is here, apparently, that you were severely intoxicated at the time these events occurred; is that correct?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: So I gather you don't have a good memory of what happened; is that correct?

THE DEFENDANT: That's correct, Your Honor.

THE COURT: So you've offered these pleas of no contest, meaning you don't contest the State would offer the evidence [the prosecutor] just—

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about any of this so far, Mr. Thomas?

THE DEFENDANT: No, sir, Your Honor.

THE COURT: As counsel have indicated, there was the evaluation at the state hospital, [which] has been returned. Counsel do not contest its content. The Court hereby makes a finding that Mr. Thomas is competent to proceed, and Mr. Thomas, you appear to be responding appropriately this morning. You understand the conversation I'm having with you. I take it on that basis you're not under the influence of any substance this morning.

THE DEFENDANT: No, sir, I'm not.

THE COURT: And you're not under any disability?

THE DEFENDANT: No, sir.

THE COURT: You're satisfied that you understand what was done here this morning, what the Court—

THE DEFENDANT: Yes, sir.

THE COURT: The Court therefore will accept and enter the pleas that have been offered as having been underlain by a factual basis, no improper inducement, so we'll order a presentence investigation report.

[¶ 11] As referenced by the district court, prior to individually addressing Mr. Thomas, it spoke to all the criminal defendants who were in the courtroom and advised them that, if they were pleading guilty, they would be waiving several rights, including the right to a jury trial where the State would be put to its proof beyond a reasonable doubt, the right to the presumption of innocence, the right to put on a case in defense, and the right to appeal. It also informed them:

The other main consequence [of pleading guilty] is that you subject yourself to the possibility of the maximum penalty provided by law. The state legislature's provided maximum penalties for the various offenses. The court is authorized by the legislation to impose a sentence up to that maximum. The Court is not required to do so, but may do so.

When a plea comes about as a result of a joint recommendation of counsel for a given sentence or disposition, the Court always very seriously considers that joint recommendation and customarily abides by it, but is not bound to do so. So you have no absolute guarantee of that.

In addition to the maximum terms of imprisonment and/or fine, the Court is required to impose other monetary obligations such as repayment to the State for the cost of the public defender services, repayment to the public defender's office for the cost of that service, and certain items of cost.

The district court gave Mr. Thomas no other advisements concerning the possible penalties attendant to his crimes.

[¶ 12] Thus, while Mr. Thomas was informed that he could be subject to the maximum penalties authorized by law for his crimes, the district court did not advise him about the specific minimum or maximum penalties associated with any of his crimes. At his initial arraignment, he waived reading of the information. At the change of plea hearing, the district court did not recite the penalties for the attempted second degree murder charge or the aggravated assault charges. The only references to penalties were the State's agreement to "cap" its recommended sentence for the attempted second degree murder charge at 20 years and defense counsel's statement that the question of whether the sentences would run concurrently or consecutively was open to argument by both parties.

[¶ 13] The State admits the district court erred by failing to advise Mr. Thomas of the penalties for his crimes but argues the error was harmless. W.R.Cr.P. 11(h) provides:

"Harmless error. Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." We have consistently held that, because strict compliance with Rule 11 is required to ensure that a defendant's constitutional rights are protected, error in the plea acceptance procedure demands reversal unless the State demonstrates it is harmless beyond a reasonable doubt. *Ingalls*, ¶¶ 10, 22, 46 P.3d at 859, 863. *See also, Maes*, ¶ 8, 114 P.3d at 710; *Stice v. State*, 799 P.2d 1204, 1208–09 (Wyo.1990).

[¶ 14] In *Keller v. State*, 723 P.2d 1244, 1247 (Wyo.1986), we held under a prior version of the rule, that the district court's failure to inform the defendant of the maximum penalties associated with his crime was not harmless and, consequently, demanded reversal. Similarly, in *Ingalls* there was no showing that the defendant had received any Rule 11 advisements in entering his guilty pleas. *Ingalls*, ¶ 14, 46 P.3d at 861.

[¶ 15] In *Rodriguez v. State*, 917 P.2d 172, 175 (Wyo.1996), we held that the district court's error in informing the defendant of a higher maximum penalty than the charges actually carried "undermined the voluntariness" of his plea and violated his constitutional right to due process. This Court explained: "The district court violated the W.R.Cr.P. 11(b)(1) requirements by failing to correctly inform Appellant with respect to the maximum penalties which could be imposed on him if he were to plead guilty." *Id.* We declined to apply a harmless error analysis in *Rodriguez* because the state did not demonstrate that the error was harmless beyond a reasonable doubt. It was "impossible to determine how Appellant might have pleaded had he been provided with accurate sentencing information." *Id.* at 176.

[¶ 16] We have, however, found errors harmless beyond a reasonable doubt in proper cases. In *Nixon v. State*, 4 P.3d 864, 869–70 (Wyo.2000), we ruled the district court's error in informing the defendant that probation was a possibility for his pleas of guilty to first degree murder and aggravated assault and battery was not reversible error because the district court had correctly recited the applicable penalties numerous times and the

record clearly demonstrated that the defendant did not rely upon the district court's incorrect statement in entering his guilty plea. In *Bird*, 901 P.2d at 1126, the defendant argued that the district court should have allowed him to withdraw his guilty plea because he was improperly informed by the district court when he pleaded guilty that he could be subjected to three life sentences if convicted of the charged crimes. In truth, he was only subject to the possibility of two life sentences under the relevant statutes. *Id.* at 1127–28. Mr. Bird waived his right to a presentence investigation and he was sentenced immediately. During the sentencing phase of the hearing, counsel informed the district court that the maximum sentence was actually two life sentences. The district court ultimately sentenced Mr. Bird to serve two concurrent life sentences. Mr. Bird did not ask to withdraw his guilty pleas at that time, but later filed such a motion. *Id.* Affirming the district court's denial of his motion to withdraw his pleas, we held that the district court's error in advising the defendant on the maximum possible penalty for his crimes was harmless:

> We cannot discern how Bird was prejudiced in any way by the initial misstatement of the maximum sentence. That misstatement was corrected in Bird's presence prior to sentencing and Bird, in fact, was sentenced to only two, not three, life sentences which were made to run concurrently. Bird had an opportunity to comment with respect to sentencing, and another opportunity to inform the court of any reason why it should not pronounce sentence. He declined each offer.
>
> Bird does not claim, nor can he, that he was threatened, directly or indirectly, with three consecutive life sentences should he not plead guilty. The misstatement occurred after Bird had advised the court through counsel of his desire to enter pleas of guilty. The erroneous statement did not induce Bird to change his plea from not guilty to guilty. The State's position rather promptly was articulated that Bird could only receive two life sentences, and that they should be imposed to run concurrently. The actual sentence imposed was

consistent with the position of the State and Bird, speaking through his attorney. While it is clear the trial court misadvised Bird with respect to the maximum penalty contrary to the requirement of WYO. R.CRIM.P. 11(b)(1), that error was harmless in light of the entire record. We are satisfied no substantial right held by Bird was affected, and he was not prejudiced in any respect.

*Id.* at 1130 (footnote omitted).

[¶ 17] The State asserts the error in this case was harmless because the record indicates Mr. Thomas understood the consequences of his no contest pleas, including the penalties for his crimes. The State insists he was aware of the penalties for the two assault charges because they were listed in the arrest warrant. The arrest warrant stated that the penalties for the aggravated assault charges were "0–10 years and/or $10,000 Fine."

[¶ 18] The State also directs us to a competency evaluation which is included in the record. The psychologists performing the evaluation indicated that Mr. Thomas was aware of the penalties for the original charges and possible amended charges associated with a potential plea agreement. The evaluation stated in part:

5. *Psycholegal Abilities Related to Competency to Proceed*
CAPACITY TO COMPREHEND AND APPRECIATE CHARGES
Upon review of Mr. Thomas' legal situation, he was able to identify his current charges in addition to alerting me to a possible plea bargain or amended information of the current charges. In a conversation with Mr. Thomas' attorney for my clarity on this matter, [defense counsel] informed me that a possible plea offering was submitted to her by the prosecuting attorney. The plea bargain that was presented by the prosecution was consistent with information that was provided by Mr. Thomas during his interview.
Mr. Thomas reported that all charges against him at this time constitute felony charges. He was corrected with respect to the two counts of Reckless Endangering, which carry a misdemeanor classification.

Mr. Thomas demonstrated an awareness that a felony charge is more serious than a misdemeanor crime. He demonstrated comprehension of the police version of the alleged criminal conduct by providing a brief synopsis of what the police say occurred. In assessing his appreciation for the seriousness of the potential penalties he could receive if convicted as charged, Mr. Thomas related that he could be facing a life sentence in prison as the main penalty for the Attempted Murder charge. Initially, Mr. Thomas was uncertain as to the penalties for all charges against him. However, upon review of the penalties throughout his interview, he demonstrated the capacity to recall and relate this information back to me. During these reviews and discussions, Mr. Thomas exhibited the capacity to appreciate the gravity of possible convictions regarding some or all of the crimes for which he is currently accused.

**Degree of incapacity in this area is assessed to be:** None based on mental illness or deficiency.

**Specific concerns:** During his interview, Mr. Thomas demonstrated the ability to relate concrete information regarding his charges and potential penalties, although initially he required some prompting and reminding. Following a couple of reviews of this information, he was more readily able to communicate this information independently. [Defense counsel] may find it helpful to review this information with Mr. Thomas from time to time throughout the adjudicative process to ensure Mr. Thomas has an up-to-date and thorough awareness of allegations against him.

Finally, the State argues that we should assume his attorney discussed the plea bargain with him and informed him of the penalties associated with his crimes.

[¶ 19] The State's arguments ignore the importance of the advisements mandated by Rule 11. In *Ingalls,* ¶ 11, 46 P.3d at 860, we stated that the district court must make the requisite advisements on the record in accordance with Rule 11 and "resort to the extended record should not be required." Even if we were comfortable with relying on

the extended record, including the arrest warrant and competency evaluation, it does not conclusively establish that Mr. Thomas was fully and correctly informed of the penalties for his crimes. The arrest warrant set forth the penalties for the aggravated assault charges but, because it pertained to the original charges, it said nothing about the penalties for attempted second degree murder. The competency evaluation indicates that the psychologists discussed the potential penalties associated with the charges in a proposed plea agreement with Mr. Thomas, but it does not delineate the details of the proposed agreement or the psychologists' understanding of the penalties associated with these new charges. We have no way of knowing if the charges discussed were even the same charges to which Mr. Thomas pleaded no contest or if the psychologists properly informed him of the penalties associated with the charges.

[¶ 20] Moreover, as we explained in *Major v. State*, 2004 WY 4, ¶ 20, 83 P.3d 468, 478 (Wyo.2004), we should not "confuse the question of competence with the separate question of whether a plea is knowing and voluntary." The competency evaluation looked at whether Mr. Thomas was competent at the time he committed the crimes and whether he was competent to proceed with the legal proceedings. It was not intended to answer the question of whether he had a sufficient understanding of the nature of the charges and penalties associated with the charges to effectively enter no contest pleas.

[¶ 21] Finally, if we simply assume, as the State asks us to, that Mr. Thomas' defense attorney adequately advised him of the nature of the plea agreement and the consequences of accepting it without requiring the district court to make the requisite advisements on the record, the purposes of the rule would be lost. Rule 11 specifically requires the court to personally address the defendant to ensure that his plea is knowingly and voluntarily entered. In *Stice*, 799 P.2d at 1208, this Court concluded that the district court erred by failing to personally question the defendant about his knowledge of the maximum penalty for his crime. We held, however, that the error was harmless

beyond a reasonable doubt because, in response to a question by defense counsel at the change of plea hearing, the defendant was able to inform the court of the maximum penalty associated with his crime. *Id.* Thus, it was clear on the record in *Stice* that the defendant understood the consequences of his guilty plea. Here, the State is asking us to assume that defense counsel properly advised Mr. Thomas of the penalties for his crimes outside of the recorded court proceeding. Rule 11 and our precedent does not allow for such an assumption.

[¶ 22] In determining whether the error in this case was harmless, we are cognizant of the fact that the State's recommended sentence on the attempted murder charge and the sentence actually imposed was the lowest possible sentence allowed under the law. The penalty for attempted second degree murder is 20 years to life imprisonment. Section 6-2-104. This fact suggests that Mr. Thomas suffered no prejudice even though he was not informed of the penalties associated with attempted second degree murder.

[¶ 23] In considering this aspect of the harmless error analysis, we are drawn to the argument Mr. Thomas sets out in his second issue. At the change of plea hearing, defense counsel represented that, in exchange for Mr. Thomas' no contest pleas, the State agreed to cap its sentencing recommendation on the attempted murder charge at 20 years. That was the information Mr. Thomas had when he pleaded. At the sentencing hearing, counsel indicated that, in order to comply with the second degree murder statute, which contained a mandatory minimum of 20 years, and the indeterminate sentencing statute, which requires minimum and maximum terms be included in sentences, the State's recommendation would have to be for a minimum sentence of 20 years and a maximum sentence of 22 years and a few months. Mr. Thomas did not object at that point, but on appeal, he argues the State breached the plea agreement. Irrespective of the State's alleged breach of the agreement, we believe that the district court's failure to inform Mr. Thomas of the penalties associated with his crimes contributed to the error in the plea agreement. Had the court recited the mini-

mum and maximum penalties at the change of plea hearing, the fact that the State could not recommend a maximum sentence of 20 years would have become obvious. Thus, the district court's acceptance of a plea agreement which included an illegal sentence recommendation further undermines the validity of Mr. Thomas' no contest pleas.

[¶ 24] On this record, we are compelled to rule that the district court's error was not harmless beyond a reasonable doubt and Mr. Thomas must be allowed to withdraw his no contest pleas. Unlike the defendants in *Nixon* and *Bird* where we found the district court's error harmless, the district court never advised Mr. Thomas of the penalties for his crimes. This case is more akin to *Keller* and *Ingalls* where we ruled that the district court's errors in failing to give the proper advisements were not harmless beyond a reasonable doubt. In light of our holding, it is unnecessary for us to consider the remainder of Mr. Thomas' complaints about the validity of his pleas or whether the State materially breached the plea agreement.

[¶ 25] Reversed and remanded.