2012 WY 110

Steve Edward DOBBINS, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

Steven Edward Dobbins, Appellant
(Defendant),

v.

The State of Wyoming, Appellee
(Plaintiff).

Nos. S–11–0050, S–11–0253.

Supreme Court of Wyoming.

Aug. 10, 2012.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1]   Pursuant to a plea agreement, Steve Edward Dobbins pleaded no contest to one count of sexual assault in the first degree, a felony, in violation of Wyo. Stat. Ann. § 6–2–302(a)(iii).   In this consolidated appeal, Dobbins contends that the district court should have permitted him to withdraw his plea, both before and after sentencing.[1]   Specifically, Dobbins complains that he should have been allowed to withdraw his plea of no contest **prior** to being sentenced because he did not have close assistance of counsel and that he had a fair and just reason to withdraw his plea.   Dobbins also argues that he should have been allowed to withdraw his plea of no contest **after** sentencing because the district court failed to properly advise him as required by W.R.Cr.P. 11, resulting in manifest injustice.   According to Dobbins, the district court abused its discretion in denying his pre-sentence and post-sentence motions to withdraw his no contest plea, and that the error of the district court was not harmless.   We affirm the denial of both of Dobbins' motions to withdraw his no contest plea, and we affirm the judgment and sentence.

## ISSUES

[¶ 2]   The issue, as phrased by Dobbins, is as follows:

> Should [Dobbins] be allowed to withdraw his plea because (1) the trial court erred in its advisements to [him], at arraignment and at the change of plea hearing;  and (2) the trial court abused its discretion in denying [Dobbins'] presentence motion to withdraw his plea?

Representing Appellant: Diane Lozano, State Public Defender and Tina N. Olson, Appellate Counsel.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; and James M. Causey, Senior Assistant Attorney General.

## FACTS AND PROCEEDINGS

[¶ 3]   In an information filed in the circuit court on May 7, 2009, Dobbins was charged with one count of sexual assault in the first degree in violation of Wyo. Stat. Ann. § 6–2–

---

1.  The consolidated appeal stems from two orders of the district court:  the Sentence Order, entered on November 23, 2010, and the Order Denying

*Defendant's Motion to Withdraw No Contest Plea,* entered on August 15, 2011.

302(a)(iii) and one count of sexual intrusion as defined by Wyo. Stat. Ann. § 6–2–301(a)(vii) with a descendant in violation of Wyo. Stat. Ann. § 6–4–402(a)(b).[2] According to an affidavit of probable cause filed with the circuit court on May 7, 2009 (attached to and incorporated within the information), on July 23, 2008 while being detained in a detention center on a different matter, the victim, Dobbins' daughter, alleged to a police sergeant that Dobbins had been having sexual intercourse with her and had been sexually assaulting her "for some time" and that the "last incident occurred three (3) to five (5) days ago." "A rape examination was not feasible at this time due to the interval between her report and the last incident." The victim was released from the detention center and moved in with an aunt, with whom she lived for approximately two weeks before leaving to move back in with Dobbins.

[¶ 4] On August 15, 2008 a deputy with the sheriff's office responded to a report of sexual assault and during his interview with the victim, was informed that "at approximately 0530 hours and again at approximately 1030 hours, while she was sleeping naked in the bed with [Dobbins] and being in the state of drunkenness, [Dobbins] engaged in sexual intercourse with her."

[¶ 5] Furthermore, the victim indicated "that she ha[d] been having sexual intercourse with [Dobbins] for approximately two (2) months," and that "the sexual intercourse [was] not consensual; and [occurred] when she [was] in a state of drunkenness and she [was] unable to stop [Dobbins'] advances." Following the interview, the victim was transported to a hospital emergency room and examined by a physician who subsequently performed a rape examination on her.

[¶ 6] According to the affidavit of probable cause, on November 18, 2008 the testifying deputy received and reviewed the analysis of the August 15, 2008 rape examination samples from the victim "and learned that the samples revealed the presence of seminal fluid and sperm cells." On November 25, 2008 a body intrusion search and seizure warrant was executed on the body of Dobbins, and on January 22, 2009 the testifying deputy learned that "the laboratory examination of the DNA evidence obtained in this investigation identified both DNA strands of [the victim] and Steve Dobbins." Additionally, forensic testing "had confirmed that the additional DNA present, in the form of male semen, found on the vaginal swabs taken from [the victim] was, in fact, a DNA match to Steve Dobbins" and that the forensic scientist who conducted the testing "concluded that Steve Dobbins had, in fact, had sexual intercourse with, *i.e.:* vaginal penetration, and had ejaculated within [the victim's] vagina."

**2.** Wyo. Stat. Ann. § 6–2–302(a)(iii) (LexisNexis 2011) provides:

§ **6–2–302. Sexual assault in the first degree.**
(a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:
. . . .
(iii) The victim is physically helpless, and the actor knows or reasonably should know that the victim is physically helpless and that the victim has not consented[.]
Wyo. Stat. Ann. § 6–2–301(a)(vii) (LexisNexis 2011) provides:
§ **6–2–301. Definitions.**
(a) As used in this article:
. . . .
(vii) "Sexual intrusion" means:
(A) Any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification or abuse; or
(B) Sexual intercourse, cunnilingus, fellatio, analingus or anal intercourse with or without emission.
Wyo. Stat. Ann. § 6–4–402(a)(b) (LexisNexis 2011) provides:
§ **6–4–402. Incest[.]**
(a) A person is guilty of incest if he knowingly commits sexual intrusion, as defined by W.S. 6–2–301(a)(vii), or sexual contact, as defined by W.S. 6–2–301(a)(vi), with an ancestor or descendant or a brother or sister of the whole or half blood. The relationships referred to herein include relationships of:
(i) Parent and child by adoption;
(ii) Blood relationships without regard to legitimacy; and
(iii) Stepparent and stepchild.
(b) Incest is a felony punishable by imprisonment for not more than fifteen (15) years, a fine of not more than ten thousand dollars ($10,000.00), or both.

[¶ 7] Pursuant to warrant, Dobbins was arrested and charged with one count of first degree sexual assault and incest. Dobbins requested and was appointed a public defense attorney. After being rescheduled twice, a preliminary hearing was held on May 6, 2009 at which time the court determined that "probable cause exist[ed] to support the charges filed" and the case was transferred to the district court for further proceedings.

[¶ 8] On May 26, 2009 Dobbins was arraigned in the district court and entered pleas of not guilty to both charges.[3] At the arraignment the following colloquy took place:

COURT: The purpose of this arraignment is to advise you of the charges, the potential penalties, make sure you understand both of them, and then determine whether or not you are ready to enter a plea.

Your constitutional rights are as follows:

To these charges you may plead guilty; not guilty; not guilty by reason of mental illness or deficiency; or, with the consent of the Court, no contest or *nolo contendere*.

You are presumed to be innocent. That presumption followed you into this hearing, and it would remain with you throughout a trial. At a trial, the State has to prove your guilt beyond a reasonable doubt. They can bring in witnesses and evidence to do so, and you have the right to confront and cross-examine those witnesses. You have the right to bring in your own. You have the right to use the subpoena power of the Court to compel their attendance. You may testify if you wish, but you are not required to.

I'll advise you not to incriminate yourself by answering any questions. If you are asked any questions, please confer with [your attorney] before you provide any answers, because those answers can and may be used against you.

You have the right to a speedy and public jury trial within 180 days of today.

You have the right to legal representation at every stage of the proceedings, either at your own expense or the Court will appoint one for you if you wish.

And finally, you have the right to appeal all errors of law.

Those are your constitutional rights, sir. Do you understand them?

DOBBINS: I believe so.

COURT: Do you have any questions at all about them?

DOBBINS: Not really, no.

COURT: Okay. Have you seen the felony Information in your case?

DOBBINS: Not—not all of it, no. I mean, what I heard in the courtroom.

COURT: All right. Have you had a chance to confer with [your attorney]?

DOBBINS: I haven't a lot. I mean, I talked to him a little bit on the phone, yeah.

COURT: All right. And are you satisfied with his representation of you thus far?

DOBBINS: Yeah.

[¶ 9] The court then asked the prosecutor to "go through what these charges [were] and the potential penalties." The prosecutor read the felony information pertaining to Counts I and II, including the minimum and maximum penalties provided by law for each charge. The prosecutor continued:

If convicted of a felony, Mr. Dobbins would lose some of his civil rights.

In addition, he would be assessed a $150 crime victim compensation surcharge. $75 public defender—or, excuse me—$75 Addicted Offender Accountability Act assessment, as well as a Wyoming Supreme Court Automation Fee of $10.

[¶ 10] The arraignment proceeding continued:

COURT: All right. Thank you.

Mr. Dobbins, do you have any questions at all about the charges?

DOBBINS: Basically, is it [sic] my understanding that I'm being accused of

---

**3.** As noted by the prosecutor during the hearing on Dobbins' second motion to withdraw no-contest plea, multiple defendants were present during this arraignment.

rape, two charges of rape? Or that's the way I understand it.

DEFENSE COUNSEL: Your Honor, if I can address that.

Mr. Dobbins, the first count is one of first-degree sexual assault, which is oftentimes referred to as a rape charge. The second count is one of incest, which is having sexual intercourse with a blood relative, basically. Okay? Do you understand the difference?

DOBBINS: Yeah. To some extent, yeah.

COURT: Do you understand what the potential penalties are?

DOBBINS: Yeah.

COURT: All right. Do you have any questions at all?

DOBBINS: No, no.

[¶ 11] Dobbins proceeded to enter pleas of not guilty to both Count I and Count II. After which, the following discussion was held:

DEFENSE COUNSEL: Yes, Your Honor. And I'd also like to, I guess, clarify the record on a couple of respects, just so it's clear.

Mr. Dobbins, when the judge asked you earlier about your criminal Information, that is the document that I believe you received a copy of that sets forth what the charges are.

DOBBINS: Oh. Oh. The one—okay. Yeah. I guess I did get—yeah, the paperwork, yeah.

DEFENSE COUNSEL: All right. So you've read that and you've reviewed it?

DOBBINS: Yeah.

DEFENSE COUNSEL: And, Mr. Dobbins, my investigator has met with you a couple of times; is that correct?

DOBBINS: One time that I remember, but I mean, yeah, the one time.

[¶ 12] Following the arraignment, a jury trial was scheduled to begin on September 28, 2009 but upon motion by Dobbins, the trial was vacated and reset for December 2, 2009. Between the May 26, 2009 arraignment and December of 2009, Dobbins, through his defense counsel, filed five motions with the court including his Motion for Continuance; Motion for Disclosure or Rule 404(b) Evidence and Motion for Exclusion of Same; Defendant's Pretrial Memorandum; Motion for Daubert Hearing and/or Motion *in Limine;* and Motion for Change of Venue and/or Motion *in Limine.*

[¶ 13] On November 20, 2009 at what was originally planned as a motion hearing, Dobbins came before the district court for a change of plea. At the change of plea hearing and after swearing in Dobbins as a witness and determining that he was not under the influence of alcohol, drugs, or medication and that he did not have any type of mental or physical impairment that would affect his ability to understand the proceedings or otherwise participate in the hearing, the court and Dobbins had the following dialogue:

COURT: Okay. Do you understand that when you change your plea, that you waive the rights that were explained to you at your arraignment? Your constitutional right to a speedy and a public jury trial, to the State having the burden of proof, having to prove your guilt beyond a reasonable doubt, your right to not testify if you wish, your right to appeal any errors of law to the Wyoming Supreme Court. Do you understand that?

DOBBINS: Yes, sir.

[¶ 14] Dobbins, by and through his attorney, proceeded to inform the court that a plea agreement had been reached and that Dobbins would be entering a plea of no-contest to Count I of the felony information and that the State would be dismissing Count II with prejudice. There was no agreement as to sentencing, so Dobbins would be allowed to present "any and all evidence in mitigation and argue sentencing at that time, as would the State."

[¶ 15] The court and Dobbins then had the following discussion:

COURT: All right. Mr. Dobbins, is that your understanding as well?

DOBBINS: Yes, sir.

COURT: All right. And then, other than this agreement, has anybody promised you anything in order to change your plea?

DOBBINS: No.

COURT: Have you been threatened in any manner?

DOBBINS: No.

COURT: Have you been satisfied with [your attorney's] representation of you in this matter?

DOBBINS: To the best I understand it, yes.

COURT: Pardon me?

DOBBINS: The best I understand it, yes.

COURT: Okay. All right. Then, [defense counsel], is your client prepared to change his plea?

DEFENSE COUNSEL: He is, Your Honor.

COURT: And how would he plead?

DEFENSE COUNSEL: Your Honor, Mr. Dobbins will be entering a no-contest plea to Count I.

COURT: All right. [Prosecutor], with respect to the factual basis?

PROSECUTOR: Thank you, Your Honor. Should this matter have gone to trial, the State would have proved beyond a reasonable doubt that on or between June 19th, 2008, and August 15th, 2008, in Park County, Wyoming, Mr. Dobbins did have sex with a victim who was physically helpless due to intoxication; and that that sexual contact, sexual intrusion, was not consensual; and that all of the events would have occurred in Park County, Wyoming. Thank you.

COURT: All right. Thank you. [Defense counsel]?

DEFENSE COUNSEL: Your Honor, that's my understanding of the allegation being made. And as [Prosecutor] has stated, that is what the State would have to prove at the time of trial. Mr. Dobbins is aware of those allegations, and is pleading no contest to those allegations in that he agrees to some of the information contained in the felony Information but not all of the statements and allegations made, but he is pleading no contest to that charge.

COURT: All right. Then, Mr. Dobbins. You heard what [Prosecutor] said, so I was going to ask you again, you are pleading no contest to what the State has just said?

DOBBINS: Yes, sir.

COURT: All right. Thank you. A PSI would be ordered, and we will come back for sentencing.

[¶ 16] Dobbins' sentencing hearing was set for January 20, 2010. However, when the parties appeared before the district court on January 20th, at Dobbins' request sentencing was postponed in order that Dobbins could undergo a psychosexual evaluation prior to sentencing. At the January 20th hearing, the following exchange occurred:

DEFENSE COUNSEL: Thank you, Your Honor. Today was scheduled for sentencing. And as was discussed in chambers, although this is somewhat a late request, I—I think it would be important for the Court, [Prosecutor], I think, and Mr. Dobbins, too, to have some additional information before the Court to consider as part of his sentencing. And that would be in the nature of some type of psychosexual evaluation for Mr. Dobbins.

. . . .

Your Honor, so what we're asking for today is—and **I've talked to Mr. Dobbins about this, and he's anxious to get this behind him and to move forward, but he, too, agrees that this might be a helpful**—some helpful information for the Court.

We would ask the Court to continue the sentencing in this case to allow for the arrangements to be made for an evaluation and submission to this Court and to counsel of that psychosexual evaluation for consideration in the sentencing. **I've discussed with Mr. Dobbins** that the Court would likely request and require that he waive his sentencing today, and a speedy sentencing, and he is willing to do that.

So what we're asking the Court for today is to continue his sentencing—we would waive speedy sentencing—and allow us some additional time to make those arrangements, hopefully, to get that evaluation done, put it on the—hopefully the fast burner, the quick burner here, and get it submitted to the Court as quickly as

possible so that we can reschedule a sentencing hearing.

COURT: Mr. Dobbins, is that your desire, sir?

DOBBINS: Yes, sir.

COURT: All right. **And you feel like you've had adequate time to confer with [your defense counsel] regarding that?**

DOBBINS: **Yeah.**

COURT: **And you are pleased with his representation of you?**

DOBBINS: **Yeah.** [Emphasis added.]

[¶ 17] On March 22, 2010 the district court received a letter from Dobbins' mother indicating that the victim in this case had died on March 19, 2010 "of liver failure." On March 23, 2010 the district court received a handwritten letter from Dobbins requesting that he be allowed to go to the funeral and also indicating his intention to write to his defense counsel for assistance in changing his plea back to not guilty. On March 25, 2010 the district court received a second handwritten letter from Dobbins, this time indicating that he had "dismissed" his lawyer and requesting that he be appointed another lawyer. On March 31, 2010 Dobbins filed a handwritten motion to withdraw his plea of no contest and as grounds for his motion stated that he had insufficient counsel at the time he entered his plea of no contest. The motion did not explain how his counsel had been insufficient.

[¶ 18] On June 17, 2010 a notice of substitution of counsel was filed by another senior assistant public defender, and on June 25, 2010 Dobbins, through his new counsel, filed a more formal motion to withdraw guilty plea and attached as grounds for his motion the handwritten motion to withdraw his plea that was previously filed on March 31, 2010. The more formal motion did not expound on Dobbins' previously filed handwritten motion.

[¶ 19] On August 25, 2010 the district court heard argument on Dobbins' motion to withdraw his plea. At the proceedings, Dob-

bins' new defense counsel told the court that just prior to entering his plea of no contest to Count I, Dobbins had asked his first defense counsel about "entering a not-guilty plea to Count I, the felony sexual intrusion charge, and enter a no-contest plea to Count II;" however, "he never got a straight answer from his counsel why that couldn't be done." "And in their discussions, he is told, 'Well, don't worry about it.'" Dobbins was then called to testify at the hearing and admitted that he had entered his plea of no contest to Count I voluntarily, but claimed he did so because he "didn't know about the other option." He claimed: "I had to learn on my own that I had the option to plead no contest. [My defense counsel] either said plead guilty or—plead guilty or plead not guilty. I didn't know I had even had the option of pleading no contest." Dobbins claimed he had later learned from the other inmates in jail that he could plead no contest.

[¶ 20] On cross-examination, Dobbins admitted that he remembered having been told at the May 26, 2009 arraignment of the maximum and minimum penalties for the charges and having been advised of the ways he could plead to the charges. With regard to the November 20, 2009 hearing when he pleaded no contest to Count I, Dobbins admitted that he could recall the court having advised him of his rights again, that the prosecutor put the plea agreement on the record, that his counsel confirmed the plea agreement, and that the prosecutor provided the factual basis for the charge.

[¶ 21] Following Dobbins' sworn testimony, the district court heard argument from both the prosecutor and Dobbins' defense counsel, including a discussion by the prosecutor of why Dobbins' argument did not satisfy the seven factors set forth in *Van Haele v. State*, 90 P.3d 708 (Wyo.2004) that are generally used to guide a district court's discretion as to whether or not the defendant wishing to withdraw a plea of guilty or no contest prior to sentencing should be allowed to do so.[4]

---

4. The seven factors listed in *Van Haele v. State*, 2004 WY 59, 90 P.3d 708 (Wyo.2004) are the factors set forth by the Fifth Circuit in *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct.

1865, 85 L.Ed.2d 159 (1985), to be considered when determining what constitutes a "fair and just" reason for withdrawal of a plea. The factors were adopted by the Tenth Circuit in *United States v. Hickok*, 907 F.2d 983, 985–86 n. 2 (10th

[¶ 22] The district court then addressed the parties, emphasized that while the November 20, 2009 change of plea hearing was "brief," it was clear at that hearing that Dobbins was competent, that Dobbins understood the advisements including "the consequences of changing the plea and the rights that were waived," and that the plea agreement was "simple enough to understand." The district court also pointed out that he had asked Dobbins at the change of plea hearing whether or not he was satisfied with his counsel's representation of him and that Dobbins answered, "To the best I understand it." The court stated that he had been "puzzled by that answer" so he asked Dobbins, "Pardon me?" to which Dobbins responded, "The best I understand it, yes."

[¶ 23] The district court then ruled as follows:

So there are two separate questions on that occasion with respect to [defense counsel]. On both he responded that he did understand. So the Court believes that the advisements were proper, were thorough, and that this change of plea was entered on a voluntary basis with the defendant understanding that he had waived his rights, and he did so on a voluntary basis, not threatened in any manner, and clearly satisfied with counsel.

So with respect to the assertion that there was ineffective assistance of counsel, even if we—if the Court considers item five, whether assistance of counsel was present, as neutral, that the other factors, the other six factors have clearly been established in the State's argument, and the Court adopts those positions as articulated by the State. And I don't believe that it's necessary to articulate each and every one of them, but the Court would simply say that I—the Court believes that, again finding factor five neutral—and the Court does not believe that five is neutral, but even if it were to find five neutral, that the other six have been satisfied. So the motion will be denied, and the Court would ask [prosecutor] to prepare an order to that effect.

On August 27, 2010 the district court entered its Order Denying Defendant's Motion to Withdraw No Contest Plea.

[¶ 24] On November 17, 2010 the parties appeared in the district court for Dobbins' sentencing hearing. After the court determined that Dobbins was competent to proceed, the defense called three witnesses to testify and subsequently defense counsel offered argument. Dobbins also read a statement under oath in which he indicated that he took "full responsibility for [his] actions." The prosecution offered only argument. After considering the testimony and arguments of both parties, Dobbins was sentenced to 25 to 30 years imprisonment. The district court's sentence order was filed on November 23, 2010, and reflecting what the court ordered at the sentencing hearing, sentenced Dobbins to "be incarcerated in a State penal institution ... for a period of not less than twenty-five (25) years and not more than thirty (30) years" with credit for time served, and he was also assessed a court automation fee of $20.00, a $150.00 surcharge for the Wyoming Crime Victim Compensation Fund, and a fee of $75.00 for an Addicted Offender Assessment.

[¶ 25] On December 10, 2010 Dobbins filed his notice of appeal giving notice of his intention to appeal to this Court the judgment and sentence of the district court. Meanwhile, while that case was awaiting briefing in this Court, on March 26, 2011 Dobbins filed his **second** Motion to Withdraw Plea in the district court. In that motion, Dobbins cited W.R.Cr.P. 11 and argued that he "was never advised **by the Court,** as required by W.R.Cr.P. 11(b)(1), of the general nature of the mandatory assessments which could be made against him." (Emphasis added.) He maintained:

If a defendant is not advised of the general nature of the assessments by the Court, then the assessments cannot be imposed without affording the defendant the opportunity to withdraw his plea. W.R.Cr.P. 11(b)(1)(B). The assessments were imposed at sentencing, as reflected by the sentencing transcript and the sen-

Cir.1990), and subsequently by this Court in *Frame v. State,* 2001 WY 72, ¶ 7, 29 P.3d 86, 89

(Wyo.2001). They are often referred to by this Court as "the *Frame* factors."

tencing order. The sentencing transcript does not reflect that Defendant was ever afforded an opportunity to withdraw his plea based on these grounds. Therefore, he must be afforded the opportunity to do so now.

[¶ 26] Dobbins also argued, generally, that the mandates of W.R.Cr.P. 11 were not met because the prosecutor read the information, as opposed to the court, and that even after the reading of the information, Dobbins "manifested confusion about the charges, and though the Court asked if he understood the penalties, the Court did not ask what his understanding consisted of."

[¶ 27] On July 29, 2011 the State filed its response to Dobbins' second Motion to Withdraw No Contest Plea. In that motion, generally, the prosecution argued that the court satisfied the mandates of W.R.Cr.P. 11, that any error by the district court was "harmless beyond a reasonable doubt," and that if what Dobbins was complaining of was the failure by the court to advise him of any assessments, the correct and proper procedure was for Dobbins to request relief through a motion for illegal sentence pursuant to W.R.Cr.P. 35.[5]

[¶ 28] On August 5, 2011 the district court heard oral arguments on Dobbins' second motion to withdraw his no contest plea, and following the arguments the court denied the motion. On August 15, 2011 the district court entered its Order Denying Defendant's Motion to Withdraw No Contest Plea. On August 22, 2011 Dobbins filed his notice of appeal giving notice of his intent to appeal the district court's order denying his motion. Dobbins' appeal of the order denying his second motion to withdraw was consolidated with his appeal from the district court's sentence order entered on November 23, 2010. The consolidated appeals are now before this Court.

## STANDARD OF REVIEW

[¶ 29] "A district court's ruling on a motion to withdraw a guilty plea or a plea of *nolo contendere* is addressed to the sound discretion of the trial court." *McCard v. State,* 2003 WY 142, ¶ 6, 78 P.3d 1040, 1042 (Wyo.2003).

Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. We will not overturn a district court's discretionary decision unless the court acted in a manner exceeding the bounds of reason and could not rationally conclude as it did.

*Van Haele,* ¶ 15, 90 P.3d at 713 (internal citations omitted).

[¶ 30] Additionally, "the findings of fact that led to denial of a motion to withdraw a guilty plea are subject to the clearly erroneous standard of review, while the decision to deny the motion is reversed only if it constituted an abuse of discretion." *McCard,* ¶ 8, 78 P.3d at 1043. Finally, "[f]or purposes of appellate review, a *nolo contendere* plea is functionally equivalent to a guilty plea." *Major v. State,* 2004 WY 4, ¶ 11, 83 P.3d 468, 472 (Wyo.2004).

## DISCUSSION

[¶ 31] As articulated by Dobbins on appeal: "Two motions to withdraw the no-contest plea are at issue here. The second

---

5. Rule 35, Wyoming Rules of Criminal Procedure, states:

**Rule 35. Correction or reduction of sentence.**
(a) *Correction.*—The court may correct an illegal sentence at any time. Additionally the court may correct, reduce, or modify a sentence within the time and in the manner provided herein for the reduction of sentence.
(b) *Reduction.*—A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within one year after the sentence is imposed or probation is revoked, or within one year after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within one year after entry of any order or judgment of the Wyoming Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision. The court may determine the motion with or without a hearing.

motion was premised on the trial court's failure to properly advise Mr. Dobbins; the first motion was premised on lack of close assistance of counsel before entry of the plea." For purposes of our discussion, we will first address Dobbins' **second (post-conviction)** motion to withdraw his no contest plea, which is based upon the allegation that the district court failed to comply with W.R.Cr.P. 11. We do so because of the commonality of the role W.R.Cr.P. 11 plays in our decisions on both the pre-sentence and post-sentence motions. Specifically, Dobbins' **second** motion to withdraw focuses exclusively on W.R.Cr.P 11, while **the law governing our analysis** of Dobbins' **first (presentence)** motion **requires** us to address the rule even though he did not do so.

### A. Dobbins' Post–Sentence Motion to Withdraw Plea

[¶ 32] W.R.Cr.P. 32(d) provides that if a motion to withdraw a plea is made **after sentencing**, a plea "may be set aside only to correct **manifest injustice**." "Manifest injustice" contemplates a "situation that is unmistakable or indisputable, was not foreseeable, and affects the substantial rights of a party."

*Browning v. State*, 2001 WY 93, ¶ 27, 32 P.3d 1061, 1069 (Wyo.2001) (quoting *McCarthy v. State*, 945 P.2d 775, 777 (Wyo.1997)) (emphasis added). "The party seeking to withdraw his plea bears the burden of demonstrating manifest injustice." *Id.*

> Justification for this heightened standard for withdrawal of a plea after sentencing is based in the
>
>> 'practical considerations important to the proper administration of justice. Before sentencing, the inconvenience to the court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury. But if a plea of guilty could be retracted with ease *after* sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. The result would be to undermine re-

spect for the courts and fritter away the time and painstaking effort devoted to the sentencing process.'

*Browning*, ¶ 27, 32 P.3d at 1069–1070 (quoting *Hicklin v. State*, 535 P.2d 743, 749 (Wyo. 1975) and *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir.1963)) (emphasis in original).

[¶ 33] "The district court has discretion in determining whether a defendant has shown manifest injustice. The discretion will not be disturbed on appeal unless the defendant proves the district court abused its discretion." *McCarthy*, 945 P.2d at 776. "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Id.* (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)).

[¶ 34] "A district court's decision to deny a motion to withdraw a plea 'will not be reversed for an abuse of discretion so long as the district court reasonably could conclude as it did.'" *Browning*, ¶ 28, 32 P.3d at 1070 (quoting *State v. McDermott*, 962 P.2d 136, 138 (Wyo.1998)).

[¶ 35] In this case, Dobbins raises two general criticisms. First, and most central to his motion, Dobbins criticizes the court for "request[ing] **the prosecutor** to go through the **charges and potential penalties,** instead of doing it itself," and failing to " 'determine that the defendant [understood]' his '**right to persist in [his not guilty] plea,**' as required by W.R.Cr.P. 11(b)(3).' " (Emphasis added.) Secondly, in keeping with his criticism that the court delegated part of the Rule 11 advisements to the prosecutor, he maintains that he "should have an absolute right to withdraw his plea ... [because he] was **never advised by the court,** as required by W.R.Cr.P. 11(b)(1) of the general nature **of the mandatory assessments** which could be made against him." (Emphasis added.)

[¶ 36] W.R.Cr.P. 11 states in relevant part:
**Rule 11. Pleas.**

. . . .

(b) *Advice to Defendant.*–Except for forfeitures on citations (Rule 3.1) and pleas entered under Rule 43(c)(2), before accepting a plea of guilty or nolo contendere to a felony or to a misdemeanor when the defendant is not represented by counsel, the court must address the defendant personally in open court and, unless the defendant has been previously advised by the court on the record and in the presence of counsel, inform the defendant of, and determine that the defendant understands, the following:

(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law and other sanctions which could attend a conviction including, when applicable, the general nature of any mandatory assessments (such as the surcharge for the Crime Victim Compensation Account), discretionary assessments (costs, attorney fees, restitution, *etc.*) and, in controlled substance offenses, the potential loss of entitlement to federal benefits. However:

(A) Disclosure of specific dollar amounts is not required;

(B) Failure to advise of assessments or possible entitlement forfeitures shall not invalidate a guilty plea, but assessments, the general nature of which were not disclosed to the defendant, may not be imposed upon the defendant unless the defendant is afforded an opportunity to withdraw the guilty plea; and

(C) If assessments or forfeitures are imposed without proper disclosure a request for relief shall be addressed to the trial court under Rule 35 before an appeal may be taken on that issue.

(2) The defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant;

(3) The defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to court process to obtain the testimony of other witnesses, and the right against compelled self-incrimination;

(4) If a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and

(5) If the court intends to question the defendant under oath, on the record, and in the presence of counsel, about the offense to which the defendant has pleaded guilty, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

. . . .

(d) *Insuring that plea is voluntary.*— The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or the defendant's attorney.

. . . .

(h) *Harmless error.*—Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.

[¶ 37] In this case, there is no question that the district court addressed Dobbins personally and engaged him in dialogue at both the arraignment and change of plea hearing. At the arraignment, the district court personally informed Dobbins of his constitutional right to a public and speedy trial; his right to plead guilty; not guilty; not guilty by reason of mental illness or deficiency; or, with permission of the court, no contest or *nolo contendere*; of the presumption of innocence and that the presumption would

remain with him throughout trial; of the fact that at trial the State would have to prove his guilt beyond a reasonable doubt; his right to be represented by counsel; his right to confront and cross-examine adverse witnesses; his right to bring his own witnesses and use the court's subpoena power; his right to testify and to **not** testify; of his right to appeal all errors of law; and was advised not to incriminate himself and to confer with his attorney before answering any questions asked of him and his right against compelling self-incrimination. And, following the prosecutor's reading of the information, Dobbins was personally asked by the court if he understood the penalties, to which he responded, "[y]eah." The court also asked Dobbins if he had **any** questions, and Dobbins responded, "[n]o, no."

[¶ 38] At the change of plea hearing, the court also personally addressed Dobbins and inquired into whether or not Dobbins understood that by changing his plea he would be waiving all of the constitutional rights of which the court had previously informed him at the arraignment. Specifically, he reminded and informed Dobbins that by pleading guilty or *nolo contendere,* he was waiving his constitutional right to a speedy and public trial, to the State having the burden of proof, having to prove his guilt beyond a reasonable doubt, his right not to testify, and his right to appeal any errors of law. W.R.Cr.P. 11(b)(4). On several occasions, the district court also personally addressed the issue of whether or not Dobbins had been satisfied with his counsel.[6]

[¶ 39] The only issue, therefore, is whether or not the strictures of W.R.Cr.P. 11 were met concerning personal advisement by the court of the minimum and maximum penalties provided by law for the charge to which Dobbins was pleading no contest and the applicable mandatory assessments, as these subjects were covered by the prosecutor at the court's request.

[¶ 40] "We have stressed that '[s]trict compliance with the rule is required to ensure due process of law.'" *Thomas v. State,*

2007 WY 186, ¶ 9, 170 P.3d 1254, 1257 (Wyo. 2007) (quoting *Ingalls v. State,* 2002 WY 75, ¶ 11, 46 P.3d 856, 860 (Wyo.2002)). We recognize that the "general purpose of the rule is 'to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary.'" *Sena v. State,* 2010 WY 93, ¶ 9, 233 P.3d 993, 996 (Wyo.2010) (quoting *Britain v. State,* 497 P.2d 543, 545 (Wyo.1972)).

[¶ 41] We also note, however, that "Rule 11 has been described as 'lengthy and complex,' and a 'change of plea hearing [does] not take place in a vacuum.'" *Sena,* ¶¶ 10 and 13, 233 P.3d at 996–97. In prior cases before this Court in which we have considered the function of W.R.Cr.P. 11 (previously W.R.Cr.P. 15), "we have taken our lead from the federal interpretation of Rule 11(c), F.R.Cr.P. noting that our Rule 15(c), W.R.Cr.P., is substantially similar to the federal rule." *Gist v. State,* 768 P.2d 1054, 1056 (Wyo.1989).

> Comment (b) to the Uniform Rule of Criminal Procedure, which parallels our Rule 15(c), W.R.Cr.P., states that the goal of this part of the rule is to produce a record which will affirmatively show that a plea of guilty was intelligent and voluntary. The rule is designed to establish that the defendant's waiver of his rights to a jury trial, confrontation of witnesses, and the protection against self-incrimination is made with understanding of the effect of his act.... The American Bar Association Standards for Criminal Justice asserts the same goal and suggests that 'the court ... take such other steps as may be necessary to assure itself that the guilty plea is entered with complete understanding of the consequences.' The comment to that standard does note that the standard recognizes that '[a] court cannot be expected to explain to a defendant in detail all of the rights that are relinquished by pleading guilty[.] The 'critically important' factor is that a plea of guilty must be intelligently entered.

---

6. The issue of whether or not Dobbins had close assistance of counsel is the subject of Dobbins' pre-sentence motion to withdraw no contest plea

and will be discussed in detail in our analysis of that motion.

... In *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the observation was made that 'the procedure embodied in Rule 11 has not been held to be constitutionally mandated.' The court further says that 'it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is voluntary.'

... A further reason noted in *McCarthy* is the need to provide a complete record of the proceedings and, thereby, discourage frivolous post-conviction attacks on the voluntariness of pleas of guilty."

*Gist,* 768 P.2d at 1056.

[¶ 42] In prior cases before this Court in which we considered issues similar to the issues in this case, we have recognized that "[f]ederal courts, in considering compliance with Rule 11, F.R.Cr.P., have focused on the **rationale for the rule.**" *Gist,* 768 P.2d at 1056 (emphasis added). In *United States v. Hamilton,* 568 F.2d 1302 (9th Cir.1978), the United States Court of Appeals for the Ninth Circuit was faced with an "appeal [that] squarely present[ed] the question of what procedures must be followed by a trial judge to satisfy the requirements of Fed.R.Crim.P. 11 governing acceptance of guilty pleas." *Id.* at 1304. In that case (similar to this case), the defendant complained that the trial judge himself did not explain the potential penalties but instead relied on the prosecutor to inform him of possible penalties. *Id.* at 1303, 1306. That court concluded that:

Requiring the court to inform a defendant of penalties does not necessarily mean that the words must literally issue from the judge's lips. We conclude that a reasonable interpretation of Rule 11 is that it means a judge must insure that the defendant understands the possible penalties before his plea is accepted.

The court can, within certain limits, satisfy the requirement by directing that another advise the defendant in the court's presence. The crucial requirement is that the judge be satisfied that the defendant understands the possible sentences and

that such understanding be apparent in the record.

*Hamilton,* 568 F.2d 1302 at 1306.

[¶ 43] The court continued:

Our conclusion conforms to *McCarthy v. United States,* [394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, (1969)] which instructed federal judges to spread a defendant's state of mind on the record at the time of the plea in order to avoid resort to after-the-fact speculation. Furthermore, permitting partial delegation in a case such as this is supported by repeated admonitions that Rule 11 not become the vehicle to transform plea hearings into ritualistic performances.

*Hamilton,* 568 F.2d 1302 at 1306.

[¶ 44] Similarly, the United States Court of Appeals for the Fifth Circuit has stated:

As for the rule's several injunctions that the trial judge personally address or inform the defendant of matters, a colloquy conducted exclusively by the judge is not required, although it is the best practice. It will usually suffice, however, that the judge dominate the inquiry and involve himself personally in it ... We do not think the spirit or the letter of the rule require that the judge be sole orator or lector, especially where multiple charges and defendants are concerned. Judges, too, get sore throats.

The courts in general have been clear that Rule 11 'is not to be read as requiring a litany or other ritual which can be carried out only by word-for-word adherence to a set "script." ' Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, October 1981, p. 26 reprinted in 91 F.R.D. 289, 326. *See also* 1 Wright, Federal Practice and Procedure, § 178, at 673 "Just as 'mere ritual does not suffice for compliance with Rule 11,' so too 'ritualistic compliance is not required.' "

*United States v. Henry,* 113 F.3d 37, 41 (5th Cir.1997) (citations omitted).

[¶ 45] While we are not prepared to abandon our long-standing directive that "[s]trict compliance with [Rule 11] is required to ensure due process of law," (*In-*

*galls,* ¶ 11, 46 P.3d at 860), we acknowledge, as previously stated, that the "change of plea hearing [does] not take place in a vacuum." *Sena,* ¶ 13, 233 P.3d at 997. We also recognize that since W.R.Cr.P. 11 is derived from its federal counterpart, we give weight to relevant federal procedure and specifically note that we, too, have indicated our reluctance to allow Rule 11 to turn into a mere ritualistic litany. *McCarty v. State,* 883 P.2d 367, 373 (Wyo.1994). See also *Gist,* 768 P.2d at 1056–57:

> In this instance, while the court did not comply with Rule 15(c), W.R.Cr.P., at the change of plea proceeding, a reading of all the proceedings relating to the initial plea and the change of plea affirmatively demonstrates that the trial court discharged its constitutional obligations and duties to Gist ... [T]he constitutional right to which Gist was entitled was not simply the mechanical reading of Rule 15, W.R.Cr.P. Gist's constitutional right was the right not to be convicted except upon a knowing, intelligent, and voluntary plea ... We agree with the district court that he was not deprived of his constitutional rights.

[¶ 46] For example, we have said that "[t]he language of W.R.Cr.P. 11(b) no longer requires the district court to perfunctorily repeat information on rights and consequences which has previously been conveyed during arraignment or during other on the record proceedings in the presence of counsel." *McCarty,* 883 P.2d at 373. In holding that the court did not err when it failed to advise a defendant during a change of plea proceeding of his right to persist in a not guilty plea (and other constitutional rights), we stated in *McCarty* that "[i]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit," and that "W.R.Cr.P. 11(b) incorporates the presumption that 'a defendant's discussions with his counsel will include descriptions of the plea bargain and the elements of the offense.'" *Id.* at 374 (internal quotes omitted). Ultimately, this Court found that when it considered the "totality of the circumstances, ...

any error in failing to advise [defendant] ... under W.R.Cr.P. 11(b)(3) was harmless." *Id.*

[¶ 47] Similarly, when we consider the totality of the circumstances surrounding Dobbins' motion to withdraw his no contest plea, including the fact that he was represented by competent counsel and entered his plea knowingly and voluntarily,[7] that the district court engaged Dobbins in dialogue regarding various constitutional rights at both the arraignment and change of plea proceeding, that the information given to Dobbins by the prosecutor regarding the charges and penalties he faced if he pleaded no contest was correct in all aspects, and that Dobbins repeatedly indicated his understanding of his constitutional rights and of the plea agreements, **we find that any variance by the district court from the procedures required by W.R.Cr.P. 11 did not affect Dobbins' substantial rights and shall be disregarded.** W.R.Cr.P. 11(h). **Any error by the district court in this case certainly did not rise to the level of manifest injustice, as is the required showing in order to withdraw a plea after sentencing. When we review the totality of the circumstances, we do not find reversible error. Accordingly, we affirm the district court's denial of Dobbins' post-sentence motion to withdraw his no contest plea.**

[¶ 48] Having determined that any error by the district court in this case was harmless error, we will only briefly address Dobbins' specific argument that W.R.Cr.P. 11(b)(1)(B) regarding the imposition of monetary assessments mandates that this Court allow Dobbins to withdraw his plea. Dobbins criticizes the district court for imposing monetary assessments at sentencing without personally advising him of the assessments at the time of his plea and argues that he must therefore be allowed to withdraw his plea at this juncture. However, Dobbins completely ignores Section (b)(1)(C) of Rule 11, that states that "[i]f assessments or forfeitures are imposed without proper disclosure a request for relief shall be addressed to the trial court under Rule 35 before an appeal may be taken on that issue." W.R.Cr.P. 11(b)(1)(C). Instead of requesting relief through a motion

---

**7.** See discussion on Dobbins' pre-sentence mo-    tion to withdraw plea.

for illegal sentence pursuant to Rule 35, however, Dobbins filed this motion to withdraw his plea entirely. We agree with the State that

[i]t is apparent [that Dobbins'] intention is not to acquire relief for court imposed monetary obligations as contemplated by the rule or his dilemma could be solved with a request to remove the fees under the auspices of an illegal sentence. Rather, [Dobbins] opportunistically seeks another avenue to appeal the issue of withdrawing his guilty plea for the purposes of standing trial. The court record coincidentally reflects [that Dobbins] has been striving to withdraw his guilty plea since the victim of his crime tragically died.

[¶ 49] Dobbins has not filed a Rule 35 motion and, therefore, according to the plain language of W.R.Cr.P. 11(b)(1)(C), Dobbins may not now raise this issue on appeal.

## B. Dobbins' Pre–Sentence Motion to Withdraw No Contest Plea

[¶ 50] A motion to withdraw a guilty plea, such as that filed here, is governed by W.R.Cr.P. 32(d) which provides that if a motion for withdrawal of a guilty plea is made **before sentence is imposed,** the court may permit withdrawal upon a showing by the defendant of any **fair and just reason.** ▮▮▮ *Frame,* ¶ 7, 29 P.3d at 89 (emphasis added). It is the defendant's burden to show "any fair and just reason" for withdrawal of his plea, and the burden only shifts to the State to demonstrate prejudice to its case if the defendant is first able to so demonstrate. See *McCard,* ¶ 9, 78 P.3d at 1043.

A defendant does not enjoy an absolute right to withdraw a plea of guilty prior to the imposition of sentence. The trial court is vested with discretion to determine whether to grant a motion to withdraw a plea of guilty made prior to sentencing, and it does not abuse that discretion by denying the withdrawal of the plea so long as the requirements of W.R.Cr.P. 11 were complied with at the time the plea was accepted. Even when the defendant provides a plausible or just and fair reason for withdrawal of the plea of guilty, the denial of the defendant's motion does not amount to an abuse of discretion if the trial court conducted a careful hearing pursuant to W.R.Cr.P. 11 at which the defendant entered a plea or pleas of guilty that was knowing, voluntary, and intelligent.

*McCard,* ¶ 6, 78 P.3d at 1042 (quoting *Stout v. State,* 2001 WY 114, ¶ 8, 35 P.3d 1198 (Wyo.2001)) (internal citations omitted).

▮▮▮ [¶ 51] In this case, we are charged with determining whether or not the district court abused its discretion in denying Dobbins' pre-sentence motion to withdraw his no contest plea. Dobbins filed his pre-sentence motion to withdraw his no contest plea, first in handwritten form on March 31, 2010 and then more formally (by his new attorney) on June 25, 2010. **In both, Dobbins focused exclusively on his claim that he had "insufficient counsel."** At the hearing on his motion on August 25, 2010, Dobbins (in his sworn testimony) and Dobbins' counsel again focused on Dobbins' contention that he did not have sufficient counsel. At no time did Dobbins or his counsel assert that the district court improperly advised him under W.R.Cr.P. 11 at the time that he was entering his plea. Dobbins relied solely upon his contention that he lacked close assistance of counsel and, as such, had a fair and just reason for withdrawal of his plea.

[¶ 52] On appeal Dobbins expanded his argument slightly to contend, albeit indirectly and only in the context of his discussion of lack of "close assistance" of counsel, that the district court failed to comply with W.R.Cr.P. 11. Based upon our review of the record before this Court, we can discern that Dobbins is asserting that the lack of close assistance of counsel coupled with the district court's alleged failure to strictly comply with W.R.Cr.P. 11 rendered his plea involuntary, thus giving him a "fair and just reason" for withdrawal of his plea. Dobbins also asserts, on appeal, that the "trial court abused its discretion in its **analysis** of the motion and in denying the motion." (Emphasis added.)

### 1. The *Frame* Factors

▮▮▮ [¶ 53] "On review we must determine whether the trial court could reasonably conclude as it did and whether any facet

of its ruling was arbitrary or capricious." *Kruger v. State*, 2012 WY 2, ¶ 26, 268 P.3d 248, 254 (Wyo.2012). "[T]he findings of fact that led to denial of a motion to withdraw a guilty plea are subject to the clearly erroneous standard of review, while the decision to deny the motion is reversed only if it constituted an abuse of discretion." *McCard*, ¶ 8, 78 P.3d at 1043.

Seven factors have been suggested as pertinent to the exercise of the court's discretion: (1) Whether the defendant has asserted his innocence; (2) whether the government would suffer prejudice; (3) whether the defendant has delayed in filing his motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was present; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

*Frame*, ¶ 7, 29 P.3d at 89.

Our intention in setting out the list of factors in *Frame* was to provide guidance to the trial courts in making the determination of whether a defendant has presented a fair and just reason in support of the motion to withdraw his guilty plea. The factors were also intended to assist us in reviewing the district court's decision. . . . We emphasize, however, that the factors were offered in *Frame* **as a guide** to the considerations that may be relevant in determining a motion to withdraw **and consideration on the record or each specific factor by the court is not mandatory. No single factor is dispositive, and the ultimate determination on the motion is based upon whether the defendant has carried his burden of establishing a fair and just reason for withdrawal.**

*Major*, ¶ 14, 83 P.3d at 473 (emphasis added).[8]

[¶ 54] In this case, despite the fact that it was his burden to show "any fair and just reason" before the district court was required to permit withdrawal of his no contest plea, Dobbins did not argue any of the *Frame* factors in either his written motion to withdraw or in his oral argument at the hearing on the motion other than factor five (whether close assistance of counsel was present). Nevertheless, the State **did** address each of the seven factors, and in making its ruling on the motion, the district court also analyzed the motion under the seven factors set forth in *Frame*. Ultimately, paying special attention to the only factor that Dobbins addressed in his motion (factor five) the district court decided that **"even if** [it] considers item five, whether assistance of counsel was present, as neutral, . . . and the Court does not believe that [it] **is** neutral," that "the other six [factors] have [clearly been established in the State's argument]." (Emphasis added.) In ruling to deny Dobbins' motion, the court "adopt[ed] those positions as articulated by the State."

[¶ 55] For purposes of our review, "[w]e do not need to do an in-depth review using the factors set out in *Frame*" because Dobbins' "motion was based upon his complaints regarding his counsel." *Major*, ¶ 25, 83 P.3d at 479. We will, however, take a closer look at factors five and six.

### Factor five: Whether close assistance of counsel was present

[¶ 56] As proof for his allegation that he did not have close assistance of counsel, Dobbins testified under oath at the hearing on his motion that his counsel effectively ignored him when he approached him with the question as to whether or not he could plead no contest to **Count II (incest)** instead of to Count I (rape). Based upon a thorough review of the record in this case, however, we find that just as has been found in previous cases in which this issue has arisen, Dobbins' allegations were "self-serving" and lacked credibility. *Frame*, ¶ 8, 29 P.3d at 89–90 (see also *McCarty*, 883 P.2d at 376: "However, McCarty's 'reasons' for withdrawing his plea were merely conclusive statements.").

---

8. "When making an argument in favor of a motion to withdraw a plea before the district court, however, it would be to the defendant's advantage to present any arguments relating to these specific factors, or any others that may arise, which favor granting the motion." *Major v. State*, 2004 WY 4, ¶ 14, n. 4, 83 P.3d 468, 473 (Wyo.2004).

[¶ 57] Dobbins testified that he approached his counsel by way of letter and telephone call with the question of whether or not he could plead "not guilty to Count I and no contest to the Count II" **prior** to the November 20, 2009 change of plea hearing. This would assume then, that **prior to the change of plea hearing,** Dobbins had some idea that this may be an option to pursue. He then testified that his understanding when he came into court for the change of plea hearing was that "I didn't have that option. I mean, I wasn't aware that I had that option to go that direction." However, he then stated: "**I had to learn on my own that I had the option to plead no contest.** He either said plead guilty or—plead guilty or plead not guilty. **I didn't know I had even had the option of pleading no contest.**" (Emphasis added.) Nevertheless, when asked when it was that he found out that he could plead no contest, he answered, "Through other inmates in jail."

[¶ 58] This Court finds Dobbins' testimony regarding this issue contradictory or inconsistent at best. On one hand he contends that he asked his counsel about other ways of pleading **prior** to his change of plea hearing and that his counsel ignored his question. On the other hand, he would have had the district court and now this Court believe that it was not until **after** he pleaded no contest to Count I and went to jail to await sentencing that he learned from the other inmates that he could have pleaded differently.

[¶ 59] Additionally, Dobbins was questioned directly by the district court on three separate occasions as to whether or not he was satisfied with his legal representation. At the arraignment and at the hearing on his motion to continue sentencing, Dobbins' answer to the court's inquiry was an unequivocal "yeah." The third time he was asked (at the change of plea hearing), again personally and directly by the district court, as to whether or not he was satisfied with his legal representation, Dobbins answered: "To the best I understand it, yes."

[¶ 60] Furthermore, just as in *Frame,* "the record belies [his] direct allegations." *Id.* ¶ 8, 29 P.3d at 89. Dobbins' counsel closely represented him at a contested preliminary hearing on May 6, 2009 at which time Dobbins' counsel examined the victim in this case, whom Dobbins had subpoenaed. Dobbins' counsel appeared before the court with Dobbins at his May 26, 2009 arraignment as well as the November 20, 2009 change of plea hearing. Between the May 26, 2009 arraignment and December of 2009, Dobbins' counsel filed five motions with the court including a Motion for Continuance, Motion for Disclosure of Rule 404(b) Evidence and Motion for Exclusion of Same, Defendant's Pretrial Memorandum, Motion for Daubert Hearing and/or Motion *in Limine,* and Motion for Change of Venue and/or Motion *in Limine.* Dobbins' counsel also appeared with him before the court at the January 20, 2010 hearing, which was originally to be a sentencing hearing, but was, at Dobbins' request, used for a hearing to request a psychosexual evaluation prior to sentencing.[9]

[¶ 61] Finally, while perhaps not directly bearing on the issue of whether or not Dobbins had close assistance of counsel but rather bearing on the issue of Dobbins' credibility, we find it compelling that the change of plea hearing was held on November 20, 2009. Dobbins had all of December of 2009, all of January of 2010, all of February of 2010, and a portion of March of 2010 during which time the record is silent as to Dobbins' desire to withdraw his plea, **including** the January 20, 2010 hearing—a time which would have been a perfect opportunity (insofar as he had the district court's ear) for Dobbins to express his concern about the lack of close assistance of counsel and/or his concerns about the plea he entered in November. However, as stated by the State, at no time during these three and a half months following his change of plea does he make a request to the court.

9. Of particular interest given Dobbins' allegations that his counsel failed to communicate with him at the January 20, 2010 hearing (at a time when Dobbins' counsel would have no "ulterior motive to cover his tracks") Dobbins' counsel states in relevant part, "**I've talked to Mr. Dobbins about this, and he's anxious to get this behind him** ..., **but he, too, agrees** ..." and "**I've discussed with Mr. Dobbins** that ... **he is willing** to do that." (Emphasis added.)

He makes no request to the Court. He doesn't say, 'Your Honor, I just learned from other inmates that I could do a no-contest plea to Count II.' Or, 'Your Honor, boy, this is all screwy. That's not what I intended to do.' We have an extended period of time where we hear nothing from Mr. Dobbins, nothing at all, until the victim dies. And then we have the 'I want to change my plea' argument.'

### Factor six: *Whether the original plea was knowing and voluntary*

[¶ 62] Whether or not a plea was knowing and voluntary is determined by an analysis within the context of W.R.Cr.P. 11:

> W.R.Cr.P. 11(d) requires a district court to assure that a plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The purpose of this rule is to allow the judge to determine whether the defendant entered the plea voluntarily and with an understanding of the consequences of the plea. **This court looks to the totality of the circumstances to determine the voluntariness of a plea.**

*Major*, ¶ 11, 83 P.3d at 472 (internal citations omitted) (emphasis added). Furthermore,

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the *court, prosecutor, or his own counsel*, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes).

*Id.*, ¶ 11, 83 P.3d at 472 (citing *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747(1970), quoting *Shelton v. United States*, 246 F.2d 571, 572 n. 2 (5th Cir.1957), *rev'd on other grounds*, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958)).

[¶ 63] In this case there is absolutely no indication in the record that Dobbins' plea of no contest was induced by threats, misrepresentation, or "promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.*, bribes)." *Major*, ¶ 11, 83 P.3d at 472. As a result, Dobbins' plea of no contest must stand if we determine that he entered his plea "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel." *Id.*

[¶ 64] In this case, we believe (as did the district court) that Dobbins entered his plea of no contest "voluntarily and with an understanding of the consequences." *Major*, ¶ 11, 83 P.3d at 472. At Dobbins' arraignment, the court personally informed Dobbins of his constitutional right to "plead guilty; not guilty; not guilty by reason of mental illness or deficiency; or, with the consent of the Court, no contest or *nolo contendere*."

[¶ 65] Next, Dobbins was advised of the charges and potential penalties, and the felony information, including the minimum and maximum penalties provided by law as to each charge being pursued by the State, was read.[10] Dobbins was also advised of the additional penalties he would face, including monetary assessments. While at this juncture in the proceedings when questioned personally by the court Dobbins expressed some uncertainty in what he was being charged with, and he ultimately (after defense counsel explained the counts and penalties further) indicated his understanding of both the charges against him as well as the penalties.

[¶ 66] At the actual change of plea hearing at which time Dobbins pleaded no contest, Dobbins again expressed his understanding of his rights (including a right to speedy trial, right to having the State prove his guilt beyond a reasonable doubt at trial, his right to not testify, and his right to appeal any errors of law). Dobbins' attorney then proceeded to inform the court that a plea agreement had been reached and that

---

10. The advisements of the charges and potential penalties were made by the prosecutor at the court's request. This Court recognizes that this is a major criticism by Dobbins in his appeal of

his post-sentence motion to withdraw his plea. However, we fully analyzed the issue in our discussion of the post-sentence motion to withdraw and found no reversible error.

Dobbins would be entering a plea of no contest to Count I of the felony information, that the State would be dismissing Count II, and that there was no agreement as to sentencing. When addressed by the court regarding the plea agreement, Dobbins responded clearly that that was his understanding as well.

[¶ 67] Following Dobbins' plea, the Court determined that in addition to the fact that Dobbins had not been promised anything to change his plea or threatened, Dobbins was aware of and understood the factual basis for the charges, and that he was knowingly and voluntarily pleading no contest to Count I.

[¶ 68] Moreover, at what was originally to be Dobbins' sentencing hearing, but what turned out to be a request by Dobbins for a postponement in order to allow Dobbins to undergo a psychosexual evaluation prior to sentencing, Dobbins, through his counsel, indicated his willingness and "anxious[ness]" to "get this behind him and to move forward." At no time prior to his filing of his motion to withdraw his no contest plea did Dobbins express or indicate that he had entered his plea involuntarily or without knowing the consequences of the plea.

[¶ 69] Furthermore, at the actual hearing on Dobbins' motion to withdraw his no contest plea, Dobbins admitted on cross-examination that he remembered having been told at the arraignment of the maximum and minimum penalties for the charges and the ways he could plead to each. Dobbins admitted that at the hearing when he pleaded no contest, he could recall the court having again advised him of his rights, of the prosecutor having put the plea agreement on the record, having had his own counsel confirm the plea agreement, and the prosecutor then providing the factual basis for the charge.

[¶ 70] When looking at the "totality of the circumstances," there is no question that Dobbins entered his plea "fully aware of the direct consequences." *Major*, ¶ 11, 83 P.3d at 472.

[¶ 71] We conclude that the district court properly analyzed Dobbins' pre-sentence motion to withdraw, that it could have rationally concluded as it did, and that Dobbins did not present any "fair and just reason" to withdraw his no contest plea. Dobbins failed to meet his burden. He did not demonstrate lack of close assistance of counsel or that his plea was entered into involuntarily or unknowingly. Also, in accordance with our thorough analysis of W.R.Cr.P. 11 in connection with Dobbins' post-sentence motion to withdraw his plea, we find that any variation from the strictures of that rule by the district court in this case, under the specific facts of this case, did not deprive Dobbins of his constitutional rights and did not rise to the level of reversible error.

## CONCLUSION

[¶ 72] Having found that any error by the district court in its advisements under W.R.Cr.P. 11 did not affect Dobbins' substantial rights and is, therefore, harmless pursuant to W.R.Cr.P. 11(h); having also found that Dobbins entered into his plea of no contest voluntarily and knowingly, and that at all times Dobbins had close assistance of counsel; we affirm the district court's denial of both Dobbins' pre-sentence and post-sentence motions to withdraw his no contest plea. The judgment and sentence entered in this case is, therefore, also affirmed.