# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 100

APRIL TERM, A.D. 2015

August 4, 2015

KELVIN WAYNE WILLIAMS,

Appellant
(Defendant),

v.

S-14-0233

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
*The Honorable Richard L. Lavery, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Joshua C. Eames, Assistant Attorney General. Argument by Mr. Eames.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]     Kelvin Williams pled guilty to third-degree sexual assault and *nolo contendere* to abuse of a vulnerable adult, for entering the home of 68-year-old A.S. and touching her breast while she lay on her bed, breathing from an oxygen tank.  At the plea hearing, the court read both charges from the Information, advised Mr. Williams of the consequences of his pleas, inquired whether Mr. Williams understood the charges and was satisfied with his counsel, and asked questions to establish a factual basis for the pleas.  On appeal, Mr. Williams contends neither plea was informed because the court failed to adequately explain the charges and establish sufficient factual bases.  We affirm.

## *ISSUES*

[¶2]     We restate the issues as follows:

        1.    Did the district court adequately explain the nature of Mr. Williams' third-degree sexual assault charge and obtain a sufficient factual basis for his guilty plea?

        2.    Did the district court adequately explain the nature of Mr. Williams' abuse of a vulnerable adult charge and obtain a sufficient factual basis for his *nolo contendere* plea?

## *FACTS*

[¶3]     The Sweetwater county prosecutor filed a criminal Information against Mr. Williams, charging him with two counts of third-degree sexual assault, one count of abuse of a vulnerable adult, and one count of burglary.  The Information described the two sexual assault counts as follows:

> On or about the 26th day of October, 2012, subject a victim, namely: A.S., to sexual contact under any of the circumstances of W.S. 6-2-302(a)(i) through (iv) or 6-2-303(a)(i) through (vi) without inflicting sexual intrusion on the victim and without causing serious bodily injury to the victim, contrary to W.S. § 6-2-304(a)(iii) - SEXUAL ASSAULT IN THE THIRD DEGREE,
>
> a felony punishable by imprisonment for not more than fifteen (15) years and the court may also impose a fine that shall not be more than ten thousand dollars ($10,000.00), W.S. §6-2-306(a)(iii) and W.S. §6-10-102.

1

[¶4]    At Mr. Williams' arraignment, the district court read the charges as listed in the Information without specifying which of the ten[1] statutory provisions referenced in the sexual assault charges applied to Mr. Williams.  Mr. Williams pled not guilty to all four counts.

[¶5]    As the proceedings unfolded, Mr. Williams expressed dissatisfaction with his first appointed attorney and, after waiving his right to a speedy trial, was provided a second attorney.  The second attorney filed a motion for a bill of particulars seeking clarification of which subsection of either Wyo. Stat. Ann. §§ 6-2-302 or 6-2-303 Mr. Williams was alleged to have violated.  During a hearing on the motion, the prosecutor explained: "What the State is going to allege for both of the sexual assaults would be under the Sexual Assault in the Second Degree subsection 6-2-303 -- 6-2-303 (a) two little (ii)s, the actor causes submission of the victim by any means that would prevent resistance by a victim of ordinary resolution."

[¶6]    Pursuant to a plea agreement, Mr. Williams eventually pled guilty to one count of third-degree sexual assault and *nolo contendere* to the abuse of a vulnerable adult charge.  Prior to receiving Mr. Williams' pleas, the district court explained the maximum sentence and restitution for each of the four charges.  The court asked Mr. Williams, "Do you have any questions about the charges or the possible penalties?"  Mr. Williams responded, "No, sir, I don't."  The court went on:

> The Court: Mr. Williams, when you were here at your arraignment you plead [sic] not guilty and the Court set the matter for trial, and as I indicated earlier this matter was set to go to trial commencing next Tuesday.  I have now been notified by the parties that there has been a plea agreement reached between you and your attorney and the county attorney's office.  Is that your understanding?
>
> [Mr. Williams]: Yes, your Honor.
>
> The Court: Is it your understanding that you will change your plea today pursuant to that agreement?
>
> [Mr. Williams]: Yes, sir.
>
> The Court: [Defense Counsel], would you put the plea agreement on the record.[2]

---

[1] Ten subsections were included in the Information, although subsection (v) of Wyo. Stat. Ann. § 6-2-303(a) had been repealed in 2007.

[2] There is no written plea agreement in the appellate record.

[Defense Counsel]: Yes, your Honor, I will.

Your Honor, [Mr. Williams] will plead guilty to Count I, third degree sexual assault. The State will dismiss Count II, third degree sexual assault. He will plead guilty to vulnerable adult -- violation of a vulnerable adult statute and that will be a -- excuse me, your Honor, a no contest plea on Count III. Then Count IV, the Burglary, will be dismissed. [Mr. Williams] will serve a term of incarceration on Count I and Count III of five to eight years in the Wyoming State Penitentiary. Both counts to run concurrent with each other.

The Court: Mr. Williams, is that your understanding?

. . . .

[Mr. Williams]: Yes, sir.

The Court: So, Mr. Williams, do you feel like you understand the plea agreement and the consequences of that agreement?

[Mr. Williams]: Yes, sir, I do.

The Court: Is it your desire today to go ahead with it?

[Mr. Williams]: Yes, sir.

. . . .

The Court: Is your change of plea today voluntary?

[Mr. Williams]: Yes, sir.

. . . .

The Court: Have you talked to [Defense Counsel] about your plea and plea agreement?

[Mr. Williams]: Yes, sir.

The Court: Are you satisfied with the work he has done for you and the advice he has given you?

[Mr. Williams]: Yes, sir.

3

[¶7]    The district court then read the charges from the Information, which had not been amended, and allowed Mr. Williams to enter his guilty plea to third-degree sexual assault and *nolo contendere* plea to abuse of a vulnerable adult.   The court then inquired of Mr. Williams to establish a factual basis for his pleas:

> The Court: So, Mr. Williams, you were in Sweetwater County back on October 26th, 2012.  Is that correct?
>
> [Mr. Williams]: Yes, sir.
>
> . . . .
>
> The Court: Were you employed at the time?
>
> [Mr. Williams]: Yes.  My wife and I owned a taxi service.
>
> . . . .
>
> The Court: So how was it that you knew [A.S.]?
>
> [Mr. Williams]: I drove [A.S.] several times to different locations here in town.
>
> . . . .
>
> The Court: So tell me what happens on October 26th, 2012.
>
> [Mr. Williams]: I stopped by [A.S.'s] house.  I went in, stood there and talked to her.  I sat down on the edge of the bed. We had [a] conversation and I touched her breast and she asked me to stop and I did.  I apologized for overstepping my bounds and I left.
>
> The Court: Mr. Williams, when you went there that day what was your reason for going there?
>
> [Mr. Williams]: I received a phone call from her on the day before asking me to stop by and see her and talk to her. [A.S.] and I were friends more than we were just taxi driver and customer.
>
> . . . .

4

The Court: In the course of talking to her, as you indicated you overstepped your bounds?

[Mr. Williams]: Yes, sir. Conversations that we had, I thought she was interested in more of an intimate relationship and I -- what would you say, I acted up on that. And evidently my thinking was different than her thinking. I'm not sure quite how to explain that. Once I realized that wasn't what she wanted, I immediately stopped when she asked me to.

The Court: What specifically did you do again?

[Mr. Williams]: I touched her breast. I massaged one part of her chest on the left side above her breast and then I touched her breast. She told me to stop and I stopped.

. . . .

The Court: We had a hearing the other day and I understood she was on oxygen.

[Mr. Williams]: She uses it when she lays down.

The Court: So she was on oxygen?

[Mr. Williams]: Yes, sir, I believe she had it on.

The Court: She didn't ask you to touch her breast?

[Mr. Williams]: No, sir.

The Court: You realized when you were doing that you were making sexual contact with her?

[Mr. Williams]: Yes, sir.

The district court asked the prosecutor whether Mr. Williams' testimony provided a sufficient factual basis for third-degree sexual assault, to which the prosecutor responded, "I believe so, Judge." The State then offered its factual basis to support Mr. Williams' *nolo contendere* plea for abuse of a vulnerable adult:

5

[Prosecutor]: Your Honor, the factual basis with respect to Count III would include the facts that were just mentioned, together with additional facts that pertain to [A.S.'s] status as a vulnerable adult. She has previously been adjudicated to be disabled by the Social Security Administration. She was on oxygen and [a] variety of medications, approximately 20. She had a triple bypass. She had hepatitis with cirrhosis of the liver, as well as some kidney issues. On the morning in question she was in bed on oxygen. She received assistance from relatives, friends, and neighbors in terms of caring for herself on a daily basis. And I believe, Judge, those would constitute the additional facts that would render her under the law a vulnerable adult.

. . . .

The Court: So, Mr. Williams, you heard the recitation of some of the facts that the State would have relied upon in order to make its case that [A.S.] was a vulnerable adult, and by pleading no contest you are telling the Court that you don't contest those things. Is that correct?

[Mr. Williams]: Yes, sir.

The district court concluded:

The Court: Well, Mr. Williams, the Court finds that you are mentally alert, that you are capable of understanding these proceedings and competent to enter your plea of guilty to Count I and no contest to Count III.

Your plea was made after consultation with competent counsel, with whom you are satisfied, without any improper inducement or conditions, and with an understanding of the charge and the possible consequences.

You were advised as required by Rule 11 and you certainly understood those advisements.

There is a factual basis for your guilty plea to Count I and the no contest plea for Count III in accordance with the plea agreement.

[¶8]   On January 28, 2014, Mr. Williams moved to withdraw his plea.  He argued that his original plea was not "knowing and voluntary" because he was misled into believing A.S. was "in a coma and expected to die on the very week of the scheduled trial[,]" and that such information "put an inordinate amount of pressure upon [him] to plea[d] wrongfully to the charge."  The district court denied the motion.

[¶9]   Mr. Williams' Judgment and Sentence was filed June 4, 2014, listing his crimes as follows:  "Count I □ Sexual Assault in the Third Degree, a felony in violation of W.S. §6-2-304(a)(iii),[3] and Count III □ Abuse of a Vulnerable Adult, a felony in violation of W.S. §6-2-507(a)[.]"  He was sentenced to not less than five years and not more than eight years on both counts, to run concurrently, with credit for 570 days time served.

[¶10]  Mr. Williams timely filed this appeal.

## STANDARD OF REVIEW

[¶11]  In his motion to withdraw his pleas, Mr. Williams argues he is entitled to *de novo* review because he raised a constitutional issue of whether his plea was adequately informed, and therefore knowing and voluntary.  Mr. Williams did move to withdraw his pleas below; however, he did so for a different reason from the one he asserts on appeal. We therefore apply the plain error standard to our review of Mr. Williams' challenge to the knowing and voluntary nature of his guilty plea.  *Duke v. State*, 2009 WY 74, ¶ 22, 209 P.3d 563, 571 (Wyo. 2009).  "'Plain error exists when: 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him.'"  *Nguyen v. State*, 2013 WY 50, ¶ 10, 299 P.3d 683, 686 (Wyo. 2013) (quoting *Kidwell v. State*, 2012 WY 91, ¶ 10, 279 P.3d 540, 543 (Wyo. 2012)); *see also* W.R.Cr.P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.").

## DISCUSSION

I.   ***Did the district court adequately explain the nature of Mr. Williams' third-degree sexual assault charge and obtain a sufficient factual basis for his guilty plea?***

[¶12] Mr. Williams argues that he was not adequately informed of the third-degree sexual assault charge to which he pled guilty and therefore his plea was not entered knowingly and voluntarily.  He claims the statutory language in the Information did not contain the essential elements of the crime, instead "incorporat[ing] by reference a

---

[3] Wyo. Stat. Ann. § 6-2-304(a)(iii) (LexisNexis 2015) converts any of the circumstances of Wyo. Stat. Ann. § 6-2-302(a)(i) through (iv) or Wyo. Stat. Ann. § 6-2-303(a)(i) through (vii) to third-degree sexual assault where the circumstances involve sexual contact and not intrusion.

laundry list of possible circumstances that would render sexual contact criminal." He concedes that during a hearing in response to a motion for a bill of particulars, at which he was present, the prosecutor stated the she intended to charge him under Wyo. Stat. Ann. § 6-2-303(a)(ii).[4] The charges remained unclear, argues Mr. Williams, because during his plea hearing the district court merely recited the "laundry list" of possible charges from the Information, and the elements of the charges were never explained to him by the court, nor were they connected to the factual basis he provided for the plea. Mr. Williams further argues that the factual basis he provided at the plea hearing does not establish that he caused submission of A.S. "by any means that would prevent resistance by a victim of ordinary resolution[.]" Wyo. Stat. Ann. § 6-2-303(a)(ii) (LexisNexis 2015).

## A. Nature of the charge, W.R.Cr.P. 11(b)

[¶13] A guilty plea is "a grave and solemn act to be accepted only with care and discernment." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970). Indeed, it "is more than a confession which admits that the accused did various acts; it is itself a conviction[.]" *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). Upon entering a guilty plea, the defendant waives his Fifth Amendment right against compulsory self-incrimination and Sixth Amendment right to a jury trial, *Boykin*, 395 U.S. at 243, 89 S.Ct. at 1712, and "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748, 90 S.Ct. at 1469. "Where a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not met and the plea is invalid." *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S.Ct. 2398, 2405, 162 L.Ed.2d 143 (2005).

[¶14] "[Wyoming Rule of Criminal Procedure] 11 is supposed to act as a guideline for the courts in determining that a plea by a defendant is intelligent, knowing, and voluntary, and that the plea has been entered with an understanding of the consequences." *Ingalls v. State*, 2002 WY 75, ¶ 11, 46 P.3d 856, 860 (Wyo. 2002). Under Rule 11(b), "[p]rior to accepting a guilty plea, the district court must advise the defendant of 'the nature of the charge to which the plea is offered.'" *Duke*, 2009 WY 74, ¶ 23, 209 P.3d at 571 (quoting W.R.Cr.P. 11(b)(1)); *see also Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 1609, 140 L.Ed.2d 828 (1998) ("We have long held that a plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against *h*im, the first and most universally recognized requirement of

---

[4] Wyo. Stat. Ann. § 6-2-303(a)(ii) (LexisNexis 2015) provides: "The actor causes submission of the victim by any means that would prevent resistance by a victim of ordinary resolution."

due process.'") (quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 574 (1941)).[5]

[¶15] In *McEwan v. State*, 2013 WY 158, 314 P.3d 1160 (Wyo. 2013), we explained the importance of the Rule 11 colloquy and advisements:

> Giving the required advisements and otherwise complying with Rule 11 may appear to be a tedious and repetitive process for trial judges, and we acknowledge that defendants are often inattentive and disinterested in the advisements. However, engaging them in dialogue as the rule requires creates a record establishing that the right to trial by jury and other rights associated with it have been relinquished knowingly and voluntarily, and it must be followed.

*Id*. at ¶ 20, 314 P.3d at 1167; *see also Ingalls*, 2002 WY 75, ¶ 11, 46 P.3d at 860 ("Strict compliance with the rule is required to ensure due process of law[.]").

[¶16] "'We have no hard and fast rule regarding how much information is necessary to explain the nature of a charge to a defendant.'" *Mehring v. State*, 860 P.2d 1101, 1107 (Wyo. 1993) (quoting *Stice v. State*, 799 P.2d 1204, 1209 (Wyo. 1990)). "In some circumstances the court may discharge this obligation by simply reading the indictment or information to the defendant and permitting him the opportunity to ask questions." *Peper v. State*, 768 P.2d 26, 29 (Wyo. 1989) (citing *Bryan v. State*, 745 P.2d 905, 907-08 (Wyo. 1987)). However, where the circumstances surrounding the plea agreement are not simple and the elements are not self-explanatory, more explanation is required of the court. *Id.* at 29-30. ("[I]t may be necessary to explain the elements of the crime and define complex legal terms."). "The actions required of the district court in any particular case depend largely on whether the elements of the offense are difficult to understand, considering both their complexity to the average person with no legal training and the sophistication of the individual defendant." *Id*. at 30 (citing *Bryan*, 745 P.2d at 907-08).

[¶17] In *Ingalls*, we reversed the defendant's pleas because of a persistent lack of clarity of the charges to which the defendant pled, and a lack of any record of the plea hearing. 2002 WY 75, ¶ 13, 46 P.3d at 861. We held that without a record, we were prevented "from knowing whether the circuit court read or described the charges to Ingalls, whether the circuit court advised Ingalls as to his rights and as to the consequence of his pleas, whether the circuit court determined the voluntariness of the pleas, or whether the circuit court determined the accuracy of the pleas." *Id*. at ¶ 14, 46 P.3d at 861. We concluded

---

[5] Wyoming's Rule 11 mirrors F.R.Cr.P. 11, and much of the jurisprudence used in interpreting the state rule originates in federal case law. "[W]hen a federal rule of criminal procedure is similar to our corresponding rule, we look to federal case law for guidance in interpreting our rule." *Smith v. State*, 2008 WY 98, ¶ 9, 190 P.3d 522, 525 (Wyo. 2008).

that the "imprecision [in charging the defendant] carried over into the taking of [the] pleas, and it is that imprecision that requires reversal of the Judgment and Sentence." *Id.*

[¶18] In *Peper*, we acknowledged that the district court provided "only minimal help" in explaining the charge of escape from official detention at the plea hearing, instead eliciting the elements of the charge through the defendant's own testimony. 768 P.2d at 30. Nevertheless, we concluded that "[v]iewing the arraignment proceeding as a whole," the court "sufficiently described the charge to appellant and sufficiently made him aware of the specific conduct which led to that charge." *Id.* Our conclusion rested on the simplicity of the elements "conceptually and in the manner articulated by the legislature[,]" and the "appellant had some college level education, and he had something more than a passing exposure to the courtroom and the plea taking process." *Id.*

[¶19] In *Mehring*, we acknowledged that the court's failure to provide a complete description of the elements at the plea hearing was not the best practice, but we also held that "complete descriptions of the elements are not mandatory in accepting a plea[.]" 860 P.2d at 1108. *See also Reyna v. State*, 2001 WY 105, ¶¶ 9, 12, 33 P.3d 1129, 1133 (Wyo. 2001) (sufficient for the court to inform the defendant that he was charged with conspiracy to commit forgery, without reading the statute or listing the elements of either conspiracy or forgery, stating "change of plea hearing did not take place in a vacuum," and the "totality of the circumstances" indicated that the defendant was "an experienced criminal," "represented by an experienced public defender who reviewed the evidence and plea options with him.").

[¶20] In Mr. Williams' case, the district court's advisement of the elements was certainly not complete. The advisement should have stepped through each element of the crime, and provided a definition of the more complex elements. However, although the charge that included ten possible statutory provisions lacked clarity, Mr. Williams was present at the hearing on his motion for a bill of particulars, at which the State clarified that it would be charging Mr. Williams under Wyo. Stat. Ann. § 6-2-303(a)(ii). Furthermore, at the plea hearing, in response to questions from the district court, Mr. Williams asserted that he had discussed his plea with counsel and that he was satisfied with the advice his counsel had given him. "Despite the fact that the trial court did not inquire if the discussions with counsel included descriptions of the elements of [the crime charged], we may apply the presumption that they did." *Mehring*, 860 P.2d at 1108 (citing *Henderson v. Morgan,* 426 U.S. 637, 647, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976)); *see also United States v. Weeks*, 653 F.3d 1188, 1198 (10th Cir. 2011) (applying the presumption that defendant's attorney explained the elements of the charge against him); *Hicks v. Franklin*, 546 F.3d 1279, 1284 (10th Cir. 2008) (stating the presumption that the attorney explained the elements will not be applied unless there is a factual basis in the record to support it). Considering the totality of the circumstances, including the fact that Mr. Williams was present at the hearing when the State specified the charge against him and his statement that counsel had discussed his plea agreement with him, we

10

conclude that Mr. Williams had sufficient information to understand the nature of the charge against him, and we find no transgression of a clear and unequivocal rule of law.

**B.  Factual basis for the plea, W.R.Cr.P. 11(f)**

[¶21] Mr. Williams next argues that he did not provide a factual basis sufficient to support his guilty plea.  "Notwithstanding the acceptance of the plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."  W.R.Cr.P. 11(f).  "The district court must be satisfied that the appellant possessed an understanding of the law and its relation to the facts of his case."  *Peper*, 768 P.2d at 29.  In *Nguyen*, we explained:

> The intent of the procedural requirement of a factual basis is to prevent the individual charged with a crime from being misled into a waiver of substantial rights.  *Sami v. State*, 2004 WY 23, ¶ 9, 85 P.3d 1014, [1017] (Wyo. 2004).  A sufficient inquiry to obtain a factual basis includes a determination that the defendant understood his conduct, in light of the law, to be criminal.  *Id*.  However, the factual basis for accepting a plea may be inferred from circumstances surrounding the crime and need not be established only from the defendant's statements.  *Id*.  W.R.Cr.P. 11 does not require proof beyond a reasonable doubt that a defendant who pleads guilty is actually guilty nor does it require complete descriptions of the elements.

2013 WY 50, ¶ 11, 299 P.3d at 686 (quoting *Maes v. State*, 2005 WY 70, ¶ 21, 114 P.3d 708, 714 (Wyo. 2005)).  The factual basis inquiry "should protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge[.]"  *Van Haele v. State*, 2004 WY 59, ¶ 13, 90 P.3d 708, 712 (Wyo. 2004) (quoting Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* 938 (2d ed. 1992)).

[¶22] In *Sami v. State*, 2004 WY 23, ¶ 10, 85 P.3d 1014, 1018 (Wyo. 2004), we articulated the scope of information available to the court for establishing a factual basis prior to acceptance of a plea:

> A record composed of the defendant's testimony and admissions and/or the state's presentation of evidence discloses a factual basis.  The trial judge may properly draw inferences from the defendant's admissions or the evidence presented by the state to satisfy all elements of the crime to which the defendant is pleading guilty.

[¶23]  In order to establish a factual basis for Mr. Williams' guilty plea, the district court needed to elicit testimony from Mr. Williams or receive evidence from the State to satisfy the element of "causes submission of the victim by any means that would prevent resistance by a victim of ordinary resolution." Wyo. Stat. Ann. § 6-2-303(a)(ii).

[¶24]  We addressed this element in *Wilson v. State*, 655 P.2d 1246 (Wyo. 1982), an appeal from a jury conviction for second-degree sexual assault under the same subsection at issue here.  At trial, the victim reported that she was forcibly abducted from her yard, then driven to a park where she was strangled and raped. *Id*. at 1255.  This Court upheld the conviction, relying on the disparate relationship between the victim and her attackers:

> Even if the victim here were not handicapped by a degree of deafness and mental retardation, her odds of putting up any effective resistance were practically nil.  She was a very small woman of childlike proportions.  The disparity in her physical strength compared to the superior strength of her aggressors would create reasonable fear and apprehension and discourage resistance by any reasonable person; this is more consistent with submission rather than consent.

*Id.* at 1258.

[¶25]  Mr. Williams stated that he had been acquainted with A.S. for over a year; he went to her residence in response to a phone call inviting him over; Mr. Williams believed A.S. was interested in "more of an intimate relationship"; A.S. was breathing supplemental oxygen and in bed, naked under the covers;  she lowered the blanket to expose her chest and breast area so that Mr. Williams could rub her chest; Mr. Williams massaged her chest above her breast and then touched her breast; she told him to stop and he stopped; and Mr. Williams apologized for his actions and left.  None of these facts support the element of "causes submission of the victim by any means that would prevent resistance by a victim of ordinary resolution."  Wyo. Stat. Ann. § 6-2-303(a)(ii).  Indeed, Mr. Williams described a situation where A.S. told him to stop and he immediately withdrew his contact and offered an apology for overstepping his bounds.  Mr. Williams provided no facts showing that he took any action that would have prevented a victim of ordinary resolution from resisting.  We conclude the district court failed to establish a factual basis for the third-degree sexual assault charge prior to accepting Mr. Williams' guilty plea, and therefore committed a transgression of a clear and unequivocal rule of law.

[¶26]  Under our plain error analysis, we must consider whether the district court's failure to establish a factual basis under W.R.Cr.P. 11 denied Mr. Williams a substantial right which materially prejudiced him.  To make that determination, we review the entire record.  In *Nguyen*, we adopted the Tenth Circuit's scope of record review when

determining whether a Rule 11(f) deviation resulted in a denial of a substantive right materially prejudicing the defendant:

> In [*United States v.*] *Landeros-Lopez*, 615 F.3d [1260,] 1263-64 [10th Cir. 2010], the Tenth Circuit also ruled that in determining whether the factual basis was sufficient to justify the district court's acceptance of the guilty plea, the reviewing court may consider only the information in the record at the time the plea was accepted. However, in deciding whether an error in accepting a guilty plea without a sufficient factual basis affected the defendant's substantial rights, the entire record may be considered. *Id*. The Tenth Circuit indicated the district court erred by accepting the factual basis, but ruled the defendant was not prejudiced because the entire record, particularly the presentence investigation report, provided a sufficient factual basis to support his guilty plea. *Id*.

*Nguyen*, 2013 WY 50, ¶ 19, 299 P.3d at 689; *see also United States v. Vonn*, 535 U.S. 55, 58-59, 122 S.Ct. 1043, 1046 (2002) (When a defendant is silent regarding a Rule 11 error, he then has the burden of satisfying the "plain-error rule and . . . a reviewing court may consult the whole record when considering the effect of any error on substantial rights.").

[¶27] Here, our review of the record reveals sufficient support for the plea. In discussing the *nolo contendere* plea, the prosecutor set forth an extensive description of A.S.'s infirmities. *See supra* ¶ 7. At the sentencing hearing, Mr. Williams discussed numerous corrections he wished to make to the Criminal History in his PSI. Although the Criminal History described the incident with A.S., stating that Williams touched A.S.'s breasts, chest, abdomen and vaginal area, and that "she felt scared and 'kept him talking' because she didn't know what to do[,]" Mr. Williams had no correction to this description of his actions. The PSI also incorporated the affidavit of probable cause, and Mr. Williams was provided the opportunity to contest the statements given to the police by A.S. and her physician referenced therein at his sentencing but failed to do so. *See Deeds v. State*, 2014 WY 124, ¶ 26, 335 P.3d 473, 480 (Wyo. 2014) (Defendant's due process right was not violated when he had the opportunity to contest information contained in the PSI but failed to do so.). Those statements indicate that Mr. Williams, without permission, entered the home of A.S. on October 26, 2012; he got into bed with her; he used his hands to make contact with A.S.'s breasts and vaginal area; A.S. was "scared" and stayed on her back the entire time with her oxygen mask on; she did not want him to hurt her, so she never told him to stop or tried to fight back; and she was afraid to get up quickly because of her heart condition. Other facts in the affidavit incorporated into the PSI indicate that A.S. is unstable and has very poor balance; she has

no peripheral vision; and she can't walk anywhere without oxygen and becomes "hypoxic with exertion."

[¶28] A.S.'s considerable infirmities created significant physical disparity between her and Mr. Williams. If a victim similar to A.S. were confronted in bed by an assailant similar to Mr. Williams, it would not be unreasonable for such confrontation to "create reasonable fear and apprehension and discourage resistance by any reasonable person[.]" *See Wilson*, 655 P.2d at 1258. We therefore conclude that there were sufficient facts in the record to support the elements of third-degree sexual assault under Wyo. Stat. Ann. § 6-2-303(a)(ii). Mr. Williams was not materially prejudiced by the district court's failure to establish a sufficient factual basis at the plea hearing. Thus, there was no plain error, and we affirm his guilty plea to third-degree sexual assault.

## II. *Did the district court adequately explain the nature of Mr. Williams' abuse of a vulnerable adult charge and obtain a sufficient factual basis for his nolo contendere plea?*

### A. Nature of the charge, W.R.Cr.P. 11(b)

[¶29] Mr. Williams argues that the elements of sexual abuse of a vulnerable adult were not adequately explained during the Rule 11 colloquy on his plea of *nolo contendere*. He claims the district court should have defined the terms "abuse" and "vulnerable adult," and without such information he did not understand the nature of the charge. As we noted in *Peper*, 768 P.2d at 29, a district court may need to define complex legal terms in the course of explaining the nature of the charges. Here, we do not find the terms overly complex. A person of Mr. Williams' intelligence, represented by counsel, could easily determine the meaning of those terms without the assistance of the district court. *Id*. at 30. As discussed, *see supra* ¶ 20, Mr. Williams stated he had discussed his plea with counsel, and we apply the presumption that his counsel explained the elements of the crime to which he was pleading. The district court established that Mr. Williams made sexual contact with A.S. without her permission, and that she was lying in bed, on oxygen, and recovering from surgery at the time.

> Viewing the arraignment proceedings as a whole, we hold the district court sufficiently described the charge to appellant and sufficiently made him aware of the specific conduct which led to that charge. By eliciting that he had, without permission, terminated his court-ordered residency at the community correctional facility and failed to return to that facility, the district court assured that appellant was not misled as to the nature of the charges against him. The elements of the offense are quite simple, both conceptually and in the manner articulated by the legislature.

*Peper*, 768 P.2d at 30.  We find, as we did in *Peper*, that the district court elicited the necessary facts and that Mr. Williams was adequately informed of the charges against him.  Accordingly, there was no transgression of a clear and unequivocal rule of law.

## B.  Factual basis for "*nolo*" plea

[¶30] Regarding Mr. Williams' argument that the district court failed to establish a factual basis for his *nolo* plea, we note that a *nolo contendere* plea is distinct from a guilty plea in that the defendant entering such a plea neither admits nor disputes the charges against him.  From this premise, we have stated that "a factual basis is unnecessary upon acceptance of a nolo contendere plea, so long as the charging document, whether it be an information, indictment, or other charging form, contains an accurate and complete statement of all the elements of the crime charged." *Van Haele*, 2004 WY 59, ¶ 13, 90 P.3d at 712 (citing *Peitsmeyer v. State*, 2001 WY 38, ¶ 7, 21 P.3d 733, 734 (Wyo. 2001)).

[¶31] Because Mr. Williams pled *nolo contendere* to the abuse of a vulnerable adult charge, the district court was only required to ensure that the Information contained an accurate and complete statement of all the elements of the crime charged. *Id*.  Count III of the Information states: On or about the 26th day of October, 2012, intentionally abused a vulnerable adult, namely: A.S., contrary to W.S. §6-2-507(a) ☐ ABUSE OF A VULNERABLE ADULT[.]"  The Information accurately and completely stated that on October 26, 2012, Mr. Williams intentionally or recklessly abused, neglected, abandoned, intimidated, or exploited a vulnerable adult, and therefore the district court was not required to establish a factual basis.[6]  We find no plain error.

[¶32]  We conclude that the district court adequately described the nature of the abuse of a vulnerable adult charge, and furthermore, because it accurately and completely recited the elements of the charge, no factual basis was necessary.

## *CONCLUSION*

[¶33] Mr. Williams was adequately informed of the nature of his third-degree sexual assault charge prior to entering his guilty plea.  While the district court failed to establish a sufficient factual basis for the guilty plea at the plea hearing, additional evidence in the record supports a factual basis for third-degree sexual assault, and we therefore affirm Mr. Williams' guilty plea.  Regarding Mr. Williams' *nolo contendere* plea for abuse of a vulnerable adult, we find the district court adequately explained the nature of the charge,

---

[6] A factual basis could additionally be found in the affidavit of probable cause and the additional facts regarding A.S.'s status as a vulnerable adult that were provided by the prosecutor.

and because it accurately and completely recited the elements of the charge, no other factual basis was necessary prior to accepting the plea.

[¶34]  We affirm.